RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
MEGAN C. HOFFMAN
Assistant Federal Public Defender
Nevada State Bar No. 09835
411 E. Bonneville Avenue, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-6261 (FAX)

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BEAU BROWN, | 2:11-cv-00790-KJD-RJJ |
| Petitioner, | |
| vs. | **FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO 28 U.S.C. § 2254** |
| DWIGHT NEVEN, et al., | |
| Respondents. | |

Petitioner, Beau Brown, through his attorney of record, Megan C. Hoffman, Assistant Federal Public Defender, files this First Amended Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254.[1]

/ / /

/ / /

/ / /

---

[1]The Exhibits referenced in this Amended Petition are identified as "Ex." Petitioner reserves the right to file supplemental exhibits as needed and relevant.

**I.**[2]

**PROCEDURAL BACKGROUND**

1.     Petitioner Brown was charged in a three (3) count Information in the Second Judicial District of Washoe County, Nevada in  The State of Nevada v. Beau E. Z.  Brown, No. CR00-1295, with Murder with the Use of a Firearm, Attempted Robbery, with the Use of a Firearm, and Burglary. (Ex. 5.)

2.     A Preliminary Hearing was held on July 13, 2000, in the Justice Court of Washoe County, with the Honorable Fidel Salcedo, Justice of the Peace,  presiding.  Brown was represented by Jennifer Lunt, Deputy Public Defender.  (Ex. 4.)

3.     Brown was arraigned on August 3, 2000 and pled not guilty to the charges in the Information.  (Ex. 6.)

4.     On July 18, 2001, a Substitution of Attorneys form was filed wherein Karla Butko substituted in as private counsel.  (Ex. 14.)

5.     Numerous pre-trial motions attempting to suppress statements of the accused, limiting testimony of other witnesses and suppressing other evidence were filed.   (Ex. 7, 9-13, 16-35.)

6.     Jury Trial commenced on April 8, 2002 and continued through April 16, 2002.  (Ex. 36-40, 42, 45.)   The jury found Brown guilty on all three counts.  (Ex. 48.)   A penalty hearing was held directly after the reading of the verdict by the jury in the guilt phase.  (Ex. 45.)   The jury returned a verdict of Life Without the Possibility of Parole.   (Ex. 49.)

7.     Sentencing was held on July 30, 2002. (Ex. 52.) Brown was sentenced as follows: Life without the possibility of parole in Count 1 with a consecutive Life Without the Possibility of Parole for use of a Firearm; 24 months to 60 months for Court II, concurrent to Count I, 24 months to 120 months for Count III also concurrent to Counts I and II.  (Id.)  The Judgment of Conviction was filed on July 30, 2002. (Ex. 51.)

8.     A Notice of Appeal was filed by on July 3, 2006.  (Ex. 53.)

/ / /

---

[2]Counsel has sent Petitioner a verification and acknowledgment of the Amended Petition for Petitioner's signature and will file that pleading with this Court upon receipt from Petitioner.

**DIRECT APPEAL**

9.    After the court initially appointed the Washoe County Public Defender to represent Brown on appeal (Ex. 55), Karla Butko was permitted to continue on as appointed counsel on appeal. (Ex. 57-8.)  An Opening Brief was filed by Ms. Butko and attorney Scott Edwards in the Nevada Supreme Court, # 47360 on February 6, 2007.  The following issues were raised:

1.    THE COURT ERRED WHEN IT FAILED TO SUPPRESS EVIDENCE IN THIS CASE.

A. THE SEARCH WARRANTS WERE DEFECTIVE .

B. EVIDENCE FROM THE 8-8-00 SEARCH OF THE CAR SHOULD HAVE BEEN SUPPRESSED

C. EVIDENCE OF THE, BOX CUTTER AND THE PHOTOGRAPH OF THE DEFENDANT HOLDING A GUN SHOULD HAVE BEEN SUPPRESSED

D. EVIDENCE OBTAINED AT  WASHOE MEDICAL CENTER SHOULD HAVE BEEN SUPPRESSED BY THE COURT

E. THE DEFENDANT'S STATEMENTS TO OFFICER WHAN SHOULD HAVE BEEN SUPPRESSED BY THE COURT

2.    DISCOVERY VIOLATIONS DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF THE 5TH , 6TH , AND 14Th AMENDMENTS OF THE CONSTITUTION .

3.    THE COURTROOM DESIGN VIOLATED THE DEFENDANT'S RIGHT TO CONFRONT THE WITNESSES AND EVIDENCE AGAINST HIM AND DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE AND IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS .

4.    CONTINUED ACTS OF PROSECUTORIAL MISCONDUCT INFECTED THE TRIAL AND DENIED BROWN OF A FAIR TRIAL

5.    THE DISTRICT COURTS REFUSAL TO INSTRUCT THE JURY DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

6.    THE DEFENDANT IS ENTITLED TO A NEW PENALTY PHASE HEARING. THE JURY IMPROPERLY REACTED TO THE STATE'S ARGUMENT THE SENTENCE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

7.    CUMULATIVE ERRORS PRECLUDED A FAIR TRIAL.

(Ex. 59.)

10.    The Nevada Supreme Court filed an Order of Affirmance on January 8, 2004.  (Ex. 62.) Remittitur issued on February 3, 2004.  (Ex. 63.)

**STATE POST-CONVICTION**

11.     On January 26, 2005, Petitioner Brown, through counsel, Richard F. Cornell, filed a Writ of Habeas Corpus in the Second Judicial District Court.  (Ex. 64.)  Following an evidentiary hearing (Exs. 69-71), supplemental briefing was filed.  (Exs. 72-74.)

12.     Findings of Fact, Conclusions of Law and Order filed on May 6, 2010.  (Ex. 76.)   A Notice of Appeal from the denial of the post conviction petition was filed on May 17, 2010.  (Ex. 78.)

13.     The Opening Brief was filed by Richard Cornell on September 16, 2010.  (Ex. 79.)  The following issues were considered by the Nevada Supreme Court:

1.    Counsel was ineffective for failing to provide appellant's expert with the original surveillance videotape.

2.    Counsel was ineffective for failing to adequately investigate an alleged conspiracy between the State's witness M.B. and the victim's son and then failing to use that information to impeach M.B.'s testimony.

3.    Counsel was ineffective for failing to request a "motive" jury instruction as that was the theory of defense.

4.    Counsel was ineffective for failing to oppose the attempted-robbery jury instruction on the grounds that it lowered the State's burden of proof and that it misstated Nevada law on renunciation.

5.    Counsel was ineffective for failing to object to the verdict form on the grounds that it did not allow the jury to find appellant guilty of second-degree murder, in violation of NRS 200.030(3).

6.    Counsel was ineffective for antagonizing the jury during the penalty hearing's closing arguments.

7.    Counsel was ineffective for failing to present to the jury during the penalty phase evidence from a forensic psychologist that appellant would not present a future danger to society.

8.    Counsel was ineffective for failing to object at the penalty hearing when the victim's father and son each requested that the jury give appellant the maximum sentence of life  without the possibility of parole.

9.    Appellate counsel were ineffective because they did not argue that the district court should have sua sponte instructed the jury on motive, the attempted-robbery jury instruction improperly lowered the State's burden of proof, the verdict forms should have included an option for second-degree murder, and the victim's family should not have been allowed to opine as to what sentence appellant  should receive.

10.    Cumulative error amounts to ineffective assistance of trial counsel.

(Ex. 79.)

14.     An Order of Affirmance was filed by the Nevada Supreme Court on May 9, 2011. (Ex. 85.)  Remittitur issued on June 3, 2011.  (Ex. 86.)

**SECOND STATE POST-CONVICTION PETITION**

15.     Brown filed a Second or Successive State Court Petition on October 12, 2010.  (Ex. 80.)

He raised the following Grounds for relief:

Ground 1:   Petitioner's conviction is in violation of his Fifth, Sixth and Fourteenth Amendment Rights to a fair trial, to due process of law and to effective assistance of counsel, because: Trial Counsel allowed a modified and enhanced video surveillance tape to be given to the expert and the expert analyzed this tape. The original version of the tape should have been given to the expert to ensure that the proper analysis was performed and that skewed conclusions were not obtained.   Trial Counsel was ineffective in failing to authenticate the excerpted video and Appellate counsel is likewise ineffective for failing to raise this issue on direct appeal as plain error.

Ground 2:   Petitioner's conviction is in violation of his Fifth, Sixth and Fourteenth Amendment Right to Miranda, to a fair trial, to due process of law and to effective assistance of counsel. Counsel's claims of a "Selective Waiver" fell below the standard of reasonable effective counsel. Officer Whan was under a duty to clarify Petitioner's statement under Nelson before further interrogation. Petitioner's statement to Detective Whan should have been suppresses.

Ground 3:   Petitioner's conviction is in violation of his Fifth, Sixth and Fourteenth Amendment Rights to a fair trial, to due process of law and to effective assistance of counsel.  Counsel's failure to challenge Jury Instruction 28 fell below the standard of reasonable effectiveness of counsel.  To the extent that appellate counsel was likewise ineffective.

Ground 4:   Petitioner's conviction is in violation of his Fifth, Sixth and Fourteenth Amendment Rights to a fair trial, to due process of law and to effective assistance of counsel.   Trial Counsel's failure to object to Sanpreet Bains' statements and prosecutorial misconduct rendered her prejudicially ineffective.   To the extent that appellate counsel could have raised this error Sua Sponte on appeal as a matter of plain error, but failed to do so, Appellate counsel was prejudicially ineffective.

Ground 5:   Petitioner's conviction is in violation of his Fifth, Sixth and Fourteenth Amendment Rights to a fair trial, to due process of law and to effective assistance of counsel.  Counsel's failure to point out inconsistencies, discrepancies , her failure to call Steve Emas as a witness, conduct her own scientific analysis on Petitioner's vehicle, request a separate hearing to determine admissibility and request a jury instruction regarding witness Testimony effecting Knight's credibility as well as a request to admonish the jury regarding Bimbo's Impeached testimony fell below the standard of reasonable effective counsel.  To the extent that counsel could have renewed her objection on appeal or raised the issues in this ground as error, but failed to do so, appellate counsel was likewise ineffective.

/ / /

5

( Ex. 80.)  A supplement was filed on August 25, 2011, raising additional grounds for relief.  (Ex. 88.)

16.    The second state habeas proceedings remain still pending in the Second Judicial District of Nevada, Washoe County.  Petitioner currently has argument scheduled in the Second Judicial District Court on April 19, 2012.  (Ex. 1)

**FEDERAL POST-CONVICTION PETITION**

17.    Petitioner mailed his instant petition for writ of habeas corpus by a state court petitioner on or about May 12, 2011.  (CR 1.)

18.    Brown requested the appointment of counsel (CR 3) and to stay his federal proceedings. (CR 5-6.)

19.    This Court granted the motion to appoint counsel on May 20, 2011, appointing the Office of the Federal Public Defender.  (CR 7.)

20.    This first amended petition follows.

**II.**

**GROUNDS FOR RELIEF**

**GROUND ONE**

**Brown was denied his right to effective assistance of trial counsel under the Sixth and Fourteenth Amendment to the United States Constitution.**

**Statement of Exhaustion:**    This claim, and its subparts (A)-(H), and (L), were presented in Brown's petition for writ of habeas corpus.  (Ex. 64.)  They were presented on appeal to the Nevada Supreme Court, and the Nevada Supreme Court reviewed the claims on their merits.  (Ex. 79, 82, 84, 85.) Subparts (I)-(L) were presented in Brown's second state post-conviction proceedings, which is still pending before the state courts.   (Ex. 80.)

**Statement in Support of Claim:**    Brown has a constitutional right to be represented by competent counsel.  Counsel's lack of effective representation in the pretrial and trial proceedings fell below an objective standard of reasonableness.  But for counsel's errors, there is a reasonable probability Brown would have had a more favorable outcome at trial.  Counsel's errors in this case deprived Brown of effective representation guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.

1    **A.      Trial counsel was ineffective for antagonizing the jury during closing arguments.**

2              Trial counsel began her penalty phase closing argument to the jury with the following

3    comments:

4            Thank you, Your Honor. Ladies and gentlemen of the jury, Your Honor, counsel.
             Hopefully tonight you will take your time in making this decision. Hopefully your
5            decision of getting a verdict back by five today wasn't so you thought you could get home
             on time. It's now five after eight.  The defendant hopes you will consider this seriously,
6            look hard at the case.

7    (Ex. 45, p. 1413.)  Trial counsel also pressed for and received a jury instruction which advised the jury

8    that Brown continued to maintain his innocence.  (Ex. 47, Instruction 10.)

9              The jury were ordered to begin deliberations for the penalty phase at 8:21 p.m.  (Ex. 45, p. 1423.)

10   Before the jury left for deliberations, one juror attempted to get the attention of the district attorney to

11   speak with him.  (Ex. 45, p. 1424.)  Upon a canvass of the juror, the court instructed the juror to write

12   down his question to the court.  (Ex. 45, p. 1427.)  At 9:15 p.m., during deliberations of Brown's

13   punishment in the penalty phase, the jury sent out the following note to the judge:

14           Your Honor, we the jury take offense to the comment made by the defense counsel, the
             unprofessional accusations, plural, impugning the integrity of this jury reaching its
15           verdict. It was a  unanimous decision. The overall and insurmountable evidence and
             decision in our verdict required 100 percent participation of all jurors. This decision was
16           not made lightly or in haste. Douglas A. Davis. And it is signed by, number one, Joseph
             Correia, Timothy Tapp, Charles Snell, Nancy Whitten, Mercy Nichovich, Dotty
17           Stephenson, Frederick Allen Davis, Gary Klemne, Gerald Koch, and Stephanie Burke.

18   (Ex. 45, p. 1430; ex. 46.)

19             The trial court discussed the note with counsel.  Defense counsel requested that the court respond

20   to the note, either as a note from the court or defense counsel indicating her desire to apologize.  (Ex.

21   45, p. 1430-31.)  Trial counsel indicated she was concerned that the jurors would transfer their animosity

22   towards defense counsel to Brown and his ultimate sentence.  (Ex. 45, p. 1432.)  In response, the court

23   formulated the following note to the jurors:

24           I have shown your note to the attorneys.  Ms. Butko apologizes to you.  She did not mean
             any offense.  Thank you for continuing to keep me informed of any of your concerns.
25

26   (Ex. 45, p. 1433; ex. 46.)  Verdict was returned at 10:35 p.m.  (Ex. 45, p. 1434.)  Brown was sentenced

27   to life without the possibility of parole. (Ex. 48.)

28   ///

7

1    Trial counsel was ineffective when she questioned the jury's guilt verdict during her penalty

2    phase closing arguments.  Her comments were so inflammatory that ten of the twelve jurors signed a

3    note indicating their offense at her inappropriate comments.  Counsel's comments were unreasonable

4    and there can be no strategic reason for her decision to antagonize the jury immediately preceding their

5    deliberation of Brown's sentence.  Despite this clear indication of a hostile jury, trial counsel did not

6    request a mistrial.  Trial counsel also did not request a continuance to permit the jury a "cooling off"

7    period between their note and their deliberation and pronouncement of sentence.  Trial counsel was

8    ineffective and Brown was prejudiced as a result.

9        **B.    Trial counsel was ineffective for failing to obtain the original surveillance tape and
         provide it to her expert witness.**

10

11    Brown's constitutional right to a fair trial was violated when the State introduced

12    unreliable evidence in the form of an altered surveillance tape.  Trial counsel was ineffective for failing

13    to obtain the original videotape and provide it to her expert.

14    The State introduced the surveillance tape of the market as evidence against Brown.  Trial

15    counsel hired a videographer, William Stephens, to examine the surveillance videos.  (Ex. 40, p. 941.)

16    Stephens admitted the videotape he was provided by counsel was of very poor quality.  (Ex. 40, p. 941.)

17    The video was of such poor quality, he could not determine the race of persons on the video.  (Ex. 40,

18    p. 956.)  The creation of a poor copy resulted in "tearing" or "streaking" on the tape.  (Ex. 40, p. 945.)

19    As a result, Stephens could not determine if there was a break in the line running down the pair of pants

20    of the perpetrator in the video.  (Ex. 40, p. 965-66.)  Trial counsel did not request that the original tape

21    be released to her expert for testing, and Stephens was not shown the original tape until the morning of

22    trial. (Ex. 40, p. 942.)

23    At the evidentiary hearing on the state habeas petition, Brown's expert, Charles Palm, an engineer

24    and photogrammeter, testified that the original excerpted video segments had been altered, in that they

25    were cropped, the images appeared to be stretched, and some sort of brightness or contrast enhancement

26    was employed.  (Ex. 69, p. 43-44, 56-7.)  In other words, the excerpted video used at trial was not really

27    a true and accurate copy of the original surveillance video.  (Ex. 69, p. 53.)  Such enhancements to the

28    video would affect the accuracy of an expert's measurements regarding the height of individuals

appearing on the video. (Ex. 69, p. 44.)  The enhancements could also change the appearance of clothing on a particular individual shown in the video.  (Ex. 69, p. 44, 55-6.)  Despite the attempted enhancements to the video, Palm testified that no one could reliably identify Brown as the perpetrator, because the video was of too poor quality to make such an identification.  (Ex. 69, p. 50.)  Palm also testified that the distorted images made it "very difficult, almost impossible, to extract valid camera parameters," and therefore any measurements will be less accurate than "clean, raw data." (Ex. 69, p. 55.)

Trial counsel was ineffective for failing to obtain the original videotape and to provide it to her expert for analysis prior to the day of trial.  Trial counsel can have no strategic reason for failing to provide her expert with the best evidence in support of her client's defense.  Counsel's failure in this case resulted in significant prejudice to Brown where an altered videotape, which the State suggested clearly showed Brown as the perpetrator at the store, was displayed repeatedly to the jury.  Brown was also prejudiced where his expert was unable to effectively argue that Brown was not the perpetrator, where he did not have accurate evidence upon which to base his opinion.  Trial counsel was ineffective.

**C.**   **Trial counsel was ineffective for failing to object to the defective verdict form.**

Brown was entitled to a fair trial, including a jury's verdict on the degree of murder. He was denied that right when the jury was not provided a verdict form which permitted an alternative finding of second degree murder.

Brown was charged with open murder and felony murder in the Information, pursuant to Nev. Rev. Stat. 200.030. (Ex. 5.)  Nev. Rev. Stat. 200.030(3) provides that the jury must "designate by their verdict whether the person is guilty of murder of the first or second degree." However, the verdict forms provided to the jury in Brown's case did not offer the option of returning a verdict for second degree murder. (Ex. 49.)  Instead, the verdict only provided the jury the option of returning a verdict for first degree murder. (Ex. 49.)  Trial counsel did not object to the improper verdict form.  Trial counsel had no reasonable strategic reason for failing to object to the verdict form or to proffer a verdict form including second degree murder as an alternative.  In fact, trial counsel requested that the jury be instructed on second degree murder. (Ex. 42, p. 1054; ex. 43, Instruction I.)

/ / /

9

Trial counsel was ineffective for failing to object to or proffer her own verdict form, which included second degree murder as an alternative.  Brown was prejudiced when the jury believed its only option was to return a verdict of guilty or not guilty on first degree murder.  Trial counsel was ineffective.

**D.      Trial counsel was ineffective for failing to properly object to the attempted robbery instruction.**

The State must prove each element of each crime charged beyond a reasonable doubt.  Any instruction that improperly lessens the State's burden of proof denies a defendant his constitutional right to due process.

Instruction 24 read as follows:

> The crime of attempted robbery is committed by a person when he or she forms the intent to commit a robbery then performs an overt act or acts in furtherance of the commission of the robbery. Once a person forms the intent and commits the act in furtherance of the robbery, he is then guilty of an attempted robbery, whether he abandoned that attempt because of the approach of other persons or because of a change in his intentions due to a stricken conscience.

(Ex. 50, Instruction 24.)  This instruction improperly lowered the State's burden of proof.

In Nevada, to prove an attempt, the State must establish: "(1) the intent to commit the crime; (2) performance of some act towards its commission; and (3) failure to consummate its commission."  <u>Moffett v. State</u>, 618 P.2d 1223, 1224 (Nev. 1980).  In this case, the State's burden of proof was lessened by the language "an overt act or acts in furtherance of the commission of the robbery."  The term "overt acts" was not defined.  In Nevada, an overt act means that the defendant took a "direct but ineffectual act toward the commission of the crime."  <u>Darnell v. State</u>, 558 P.2d 624, 626 (Nev. 1976).  The language in Instruction 24 permitted the jury to conclude that evidence of preparatory acts was sufficient to conclude Brown was guilty of attempted robbery and felony murder.  This lessened the State's burden of proof.

Likewise, the second sentence of the instruction was erroneous where it denied Brown the opportunity to have the jury instructed on the renunciation of the intent to commit the crime.  In this case where there was nothing taken from the store, the jury could have easily decided that the perpetrator abandoned the intent to rob the store.  Brown was entitled to have an instruction on this theory. (Ex. 42,

1  p. 1038-41.)

2        Trial counsel objected to this instruction on the basis that it shifted the burden of proof to Brown.

3  Trial counsel failed to object to the instruction on the basis that the instruction lowered the State's burden

4  of proof and inaccurately stated the law.  Trial counsel had no strategic reason for failing to object to the

5  instruction on these grounds and she was ineffective for failing to do so.  As a result of her actions,

6  Brown was convicted of attempted robbery and, likely, felony murder.  Trial counsel was ineffective.

7        **E.       Trial counsel was ineffective for failing to object to the testimony from the victim's family regarding preferred punishment.**

8

9        During their testimony in the penalty hearing, the victim's father and son urged the jury

10  to impose the "maximum sentence" and "life without parole."  (Ex. 45, p. 1391, 1395.) The victim's

11  father testified:

12        But I pray to the members of the jury that for- such a tragic, tragic cruelty, such a diabolical act which has been perpetrated by that man, he should be -- it is all up to you.

13        But at least the maximum punishment, the life imprisonment and that he should not be allowed to go out during the time of imprisonment.

14

15        Because if he goes away after ten years, or 20 years, as you -- as you, Your Honor, would like to say, I don't know, but I would at least pray for, pray before you that we are not -- I know the torture that I felt as, after the death of this man. I don't want that, parents to

16        suffer like this, but at the same time I have heard the case also. I heard the words from all these ...

17

18        I pray, I can only say that he should be given life imprisonment and he should not be allowed to come either on bail or on parole, whatever it is, during that period.

19  (Ex. 45, p. 1391.)  Trial counsel did not object to the testimony.

20        Testimony by a victim's family's regarding its opinion of the defendant, the crime or the ultimate

21  punishment may violate the Eighth Amendment.  Also, while some victim impact evidence is

22  permissible, the trial court must still conclude that the evidence is relevant and admissible.

23        In this case, trial counsel was ineffective for failing to object to the opinion testimony by the

24  victim's sons.  She had no reasonable strategic reason for failing to do so, and Brown was prejudiced

25  when this highly inflammatory testimony was offered against him at the penalty hearing.  Trial counsel

26  was ineffective.

27  / / /

28  / / /

11

**F.     Trial counsel was ineffective for failing to present mitigation evidence at the penalty hearing.**

Trial counsel hired Dr. Ted Young, a neuropsychologist, prior to trial and proffered his testimony to the trial court as relevant guilt phase testimony. (Ex. 39, p. 847-51.)  In part, Dr. Young was to testify to Brown's amnesia of the events on the night of the murder. (Id.)  Her motion was denied by the trial court.  (Ex. 39, p. 924-32.)

At the evidentiary hearing, trial counsel testified that her initial strategy for presenting mitigation evidence in the penalty phase included "hopefully" Dr. Young.  (Ex. 39, p. 8, 27.)  Specifically, she intended Dr. Young to testify that Brown was amenable to rehabilitation and not a psychopath.  (Ex. 70, p. 8.)  Ultimately, trial counsel did not call Dr. Young at the penalty hearing, because "[m]y thought on mitigation is you want to put up only things that are positive for your case.  There's enough negative in this courtroom without me adding to it."  (Ex. 70, p. 66.)  Counsel testified this decision was based upon Brown's somewhat contradictory testimony at the trial, and her concern that Dr. Young would be subject to cross-examination during the penalty phase concerning the amnesia defense.  (Ex. 70, p. 66-67.)

Dr. Jerry Nims testified at the evidentiary hearing that Brown had some mild psychological problems, including drug and alcohol abuse.  (Ex. 69, p. 16; ex. 96.)  Brown did not suffer from a serious mental disorder.  Nor were there any indications of criminal behavior or orientation.  (Ex. 69, p. 16; ex. 96.)

Trial counsel has a duty to investigate.  This duty extends to the penalty phase and preparation and presentation of mitigation evidence.  In this case, trial counsel's performance was deficient where she did not request Dr. Young to assess Brown's future dangerousness.  Trial counsel did not consider or attempt to hire another expert, who could have provided testimony concerning Brown's lack of future dangerousness, his lack of serious mental illness or psychosis, and as to Brown's limited intelligence.  As a result of trial counsel's ineffectiveness, the jury was not provided any evidence concerning Brown's lack of violent tendencies and his ability to be rehabilitated.  Trial counsel's decision was unreasonable and Brown was prejudiced where the jury returned a sentence of life without the possibility of parole.

/ / /

/ / /

12

**G.      Trial counsel was ineffective for failing to request a complete motive instruction.**

The trial court did not provide the jury with an instruction regarding motive.   Trial counsel did not object, nor did she proffer her own instruction on motive.   In post-conviction, Brown proffered the following motive instruction:

> Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish the defendant is guilty. Absence of motive may tend to show the defendant is not guilty.

(Ex. 97; ex. 79, p. 52 n 13.)   Trial counsel testified at the evidentiary hearing she was unaware of the availability of such an instruction and did not consider offering such an instruction to the court. (Ex. 70, p. 39.)

A defendant is entitled to an instruction on his theory of defense.   Where Brown's defense was to introduce reasonable doubt that a person named "Travis" killed the victim, the State failed to prove that Brown killed the victim beyond a reasonable doubt.   Trial counsel was obligated to ensure that the jury instructions presented the jury with Brown's theory of defense, including that he lacked motive to kill the victim.   Trial counsel was ineffective for failing to investigate motive instructions and to proffer one on Brown's behalf.   Brown was prejudiced as a result when the question of motive was left unanswered for the jury in the instructions.   Trial counsel was ineffective.

**H.      Trial counsel was ineffective for failing to investigate whether Mr. Bimbo's testimony was the product of a conspiracy between himself and the victim's son and for failing to impeach Mr. Bimbo with the information.**

At the evidentiary hearing, Bonnie Brown, Brown's mother, testified that she overheard a conversation between witness Marco Bimbo, his son and one of the victim's sons (Sarvpreet Bains) in the hallway of the courthouse during trial.   (Ex. 70, p. 91.)   Mrs. Brown took notes of the conversation, and she overheard Mr. Bimbo say "They showed me the guy, and I told 'em it wasn't him, man" and "I think they screwed up and showed me the wrong guy or something." (Ex. 70, p. 98-9.)   Mr. Bimbo was also overheard describing the person as "young" with "black hair." (Ex. 70, p. 99.)   Mrs. Brown overheard Mr. Bimbo telling Bains "you just tell the truth and we'll take care of the rest," and Mr. Bimbo's son saying "we'll fuck him up good." (Ex. 70, p. 100-01.)   Mrs. Brown spoke with trial counsel's investigator and told him what she had seen and heard. (Ex. 70, p. 102.)   She also advised trial

13

1  counsel of what she had heard.  (Ex. 70, p. 103, 93.)  Mrs. Brown told trial counsel that Vickie Bates

2  also heard a conversation during another recess. (Ex. 70, p. 103-04.)

3      Vickie Bates testified that she heard Bains say to Mr. Bimbo "Don't worry about it.  Go ahead

4  and say what we talked about."  And "I'll take care of your family" or "your family will be taken care

5  of."  (Ex. 71, p. 6.)

6      At the evidentiary hearing, trial counsel testified she did not recall learning that Ms. Bates knew

7  anything.  (Ex. 70, p. 43.)  Trial counsel also testified that she did not believe she could prove the

8  conversation overheard by Mrs. Brown had happened, where both of the witnesses denied the

9  conversation occurred.  (Ex. 70, p. 45; TT 4/9/02, p. 273-8.)  Trial counsel was surprised when Mr.

10  Bimbo's testimony on the stand identifying Brown was contradictory to his police statements and his

11  statements to the defense investigator.  (Ex. 70, p. 46-7.)

12      Prior to trial, the person Mr. Bimbo described seeing did not match Brown's description.  (Ex.

13  92.)  He also advised the defense investigator that Brown was not the same person he saw at the pay

14  phone on the day of the murder. (Ex. 37, p. 310.) After this conversation with Bains occurred, however,

15  Mr. Bimbo testified at trial and identified Brown as the person he saw.  (Ex. 37, p. 315.)

16      The use of false testimony violates a defendant's right to due process.  Trial counsel has an

17  obligation to investigate or to make a reasonable decision that the investigation is unnecessary.  In this

18  case, trial counsel was advised by two people of an inappropriate conversation between Bains and Mr.

19  Bimbo.  Counsel failed to speak with Ms. Bates regarding her observations.  Trial counsel failed to

20  conduct additional investigation on the existence of a possible conspiracy between Mr. Bimbo and Bains.

21  Had she conducted such investigation, she could have impeached Mr. Bimbo's testimony against Brown,

22  which proved to be critical.  She could have also moved to exclude the testimony.   Brown was

23  prejudiced as a result of his counsel's ineffectiveness.

24      **I.      Trial counsel was ineffective for failing to challenge the flight instruction.**

25      The court instructed the jury as follows:

26  The presence or absence of a deliberate attempt to avoid apprehension or prosecution by
   a person after the commission of a crime is insufficient of itself to establish his or her

27  guilt or innocence, but is a fact which, if proven, may be considered by you along with
   all other proven facts in deciding the question of guilt or innocence.

28

14

1    The weight, if any, to which such a circumstance is entitled is a matter for the jury to
2    determine.

3    (Ex. 50, Instruction 28).  Trial counsel did not object to the instruction.  (Ex. 42.)

4         The State presented no evidence of flight, particularly where the State's theory included Brown

5    returning to the scene to render first aid.  Under the circumstances, it was improper to instruct the jury

6    on flight where there was no flight.  The trial court abused its discretion in instructing the jury on flight.

7    Trial counsel's failure to object to this instruction deprived Brown of his right to the effective assistance

8    of counsel.  But for counsel's ineffectiveness, Brown would have had a better outcome at trial.

9         **J.    Trial counsel was ineffective in the presentation of her objection to the testimony
          of Officer Knight.**

10        NRS 50.275 provides:

11   If scientific, technical or other specialized knowledge will assist the trier
12        of fact to understand the evidence or to determine a fact in issue, a
          witness qualified as an expert by special knowledge, skill, experience,
13        training or education may testify to matters within the scope of such
          knowledge.

14

15   Officer Knight was permitted to testify as an expert although he was not qualified as an expert.  The

16   problem with permitting police officers to testify as experts is that their testimony often does not comply

17   with due process requirements of reliability and relevance.  Here, Knight's testimony was not reliable

18   as he was not qualified as an expert.  Brown was prejudiced as a result, in violation of his federal

19   constitutional right to due process.

20        The State proffered the testimony of Officer Knight as an officer with experience in crime scene

21   reconstruction.  (Ex. 38, p. 710-11.)  The prosecutor argued Knight's testimony was relevant to prior

22   testimony from three witnesses who saw a tan car parked in the store's parking lot, and which left skid

23   marks or pealed out of the area.  (Id.)  At most, Knight could testify that the tire marks on the scene were

24   consistent with the tires on Brown's car.

25        Brown objected to the testimony as "confusing, a waste of time for the jury and it's not relevant."

26   (Id., p. 712.)  Trial counsel argued that the fact that Brown was at that location and may have left a mark

27   earlier in the day does not indicate that Brown was present later in the day when the murder occurred.

28   (Id.)  The trial court overruled Brown's objection, finding the testimony tended to corroborate the

1  testimony of prior witnesses.  (Id.)

2  However, Knight's testimony did not corroborate the testimony of other witnesses and was, in

3  fact, more prejudicial than probative and irrelevant.  Knight testified that he was assigned to the traffic

4  investigation branch of the Reno Police Department for two to three years.  (Ex. 39, p. 722.)  He outlined

5  his experience and training.  (Ex. 39, 722-23.)  Knight testified on several occasions that Brown's

6  vehicle had a manual transmission.  (Ex. 39, p. 723, 731.)  However, the trial exhibits showed the

7  transmission was an automatic.  (Ex. 100.)  Trial counsel did not impeach Knight with this evidence.

8  This testimony was important because Knight testified it is much easier to leave a scuff mark with a

9  manual transmission.  (Ex. 39, p. 729, 731-32.)  Knight was also unable to testify as to the date or time

10  on which the marks were made.  (Ex. 39, p. 731-32.)

11  It is entirely possible that Knight was not testifying to the specifics of Brown's car, and his

12  testimony was improperly admitted.  Admission of the testimony violated Brown's right to due process

13  where the jury heard evidence which was not reliable and which was more prejudicial than probative.

14  Trial counsel was ineffective for failing to properly object to Knight's testimony as irrelevant.  She also

15  failed to impeach Knight.  Trial counsel was ineffective.  But for her actions, Brown would have had a

16  more favorable result at trial.

17  **K.    Trial counsel was ineffective for failing to object to Sarvpreet Bains' penalty phase testimony.**

18

19  Sarvpreet Bains testified during the penalty and sentencing hearings that Brown laughed

20  at him and his family.  (Ex. 45, p. 1394; ex. 52, p. 28.)  The prosecutor improperly emphasized this false

21  and improper testimony during his penalty phase closing arguments.  (Ex. 45, p. 1394.)  He also

22  emphasized the testimony during sentencing.  (Ex. 52, p. 26-27.)  The trial court did not recall Brown

23  ever laughing at the victim's family.  (Ex. 52, p. 27.)  Trial counsel objected to this testimony at

24  sentencing, but failed to do so during the penalty phase.  (Ex. 52, p. 26.)

25  Trial counsel was ineffective for failing to object to this testimony before the jury, the body

26  which determined Brown's sentence.  Brown was prejudiced where the jury heard testimony that Brown

27  laughed at the victim's family, which could be interpreted to show a lack of remorse.  Brown did no such

28  thing during trial, a fact confirmed by trial counsel and the court.  But for counsel's ineffectiveness,

1    Brown would have had a better outcome at trial.

2        **L.    Trial counsel was ineffective in her presentation of the motion to suppress Brown's statements.**

3

4        Trial counsel filed multiple motions to suppress Brown's statements to police.  (Exs. 9,

5    15.)  Trial counsel fashioned the motions as Brown invoking a selective waiver of his right to counsel,

6    whereby he waived his right to counsel on the misdemeanor charge but not the murder charge.  (Id.)  In

7    fact, Brown's right to counsel was violated when he invoked his right to counsel by asking the officer

8    if he needed a lawyer, noting that "if I'm only being charged with O&R, I don't need one."  (Ex. 95, p.

9    4.)  To the extent this statement was ambiguous, the police officer was required to inquire further to

10   determine whether Brown was knowingly, intelligently and voluntarily invoking his right to counsel.

11   Trial counsel was ineffective for failing to properly raise the suppression motion issue. Brown was

12   prejudiced when the trial court denied his motion to suppress, based upon the "selective waiver" theory

13   put forth by counsel.

14       **M.    Cumulatively, these errors amounted to the ineffective assistance of counsel.**

15       The doctrine of cumulative error mandates relief for Brown.  The combination of errors

16   which occurred as the result of the ineffective assistance of counsel, when viewed in light of the state

17   court  record,  constitutes  cumulative  error  warranting  relief  from  the  numerous  violations  of

18   constitutional rights suffered by Brown in this matter.

19       Any contrary decision by a state court would be contrary to, or an unreasonable application of,

20   clearly established federal law, and/or would involve an unreasonable determination of the facts in light

21   of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

22                                    **GROUND TWO**

23       **Brown was denied his right to effective assistance of appellate counsel under the Sixth and Fourteenth Amendment to the United States Constitution.**

24

25       **Statement of Exhaustion:**    This claim, and its subparts (A)-(D), were presented in Brown's

26   petition for writ of habeas  corpus.  (Ex. 64.)  They were presented on appeal to the Nevada Supreme

27   Court, and the Nevada Supreme Court reviewed the claims on their merits. (Ex. 79, 82, 84, 85.) Subpart

28   (E) was presented in Brown's second state post-conviction proceedings, which is still pending before

                                        17

1 the state courts.  (Ex. 80.)

2  **Statement in Support of Claim:** Brown has a constitutional right to be represented by

3 competent counsel.  Counsel's lack of effective representation in the appellate proceedings fell below

4 an objective standard of reasonableness.  But for counsel's errors, there is a reasonable probability

5 Brown would have had a more favorable outcome on appeal.  Counsel's errors in this case deprived

6 Brown of effective representation guaranteed under the Sixth and Fourteenth Amendments to the United

7 States Constitution.

8  **A.**  **Appellate counsel were ineffective for failing to challenge the defective verdict form**

9    **on appeal.**

10  Brown was entitled to a fair trial, including a jury's verdict on the degree of murder. He

11 was denied that right when the jury was not provided a verdict form which permitted an alternative

12 finding of second degree murder.

13  Brown was charged with open murder and felony murder in the Information, pursuant to Nev.

14 Rev. Stat. 200.030.  (Ex. 5.)  Nev. Rev. Stat. 200.030(3) provides that the jury must "designate by their

15 verdict whether the person is guilty of murder of the first or second degree."  However, the verdict forms

16 provided to the jury in Brown's case did not offer the option of returning a verdict for second degree

17 murder.  (Ex. 49.)  Instead, the verdict only provided the jury the option of returning a verdict for first

18 degree murder.  (Ex. 49.)  Trial counsel did not object to the improper verdict form.  Appellate counsel

19 had no reasonable strategic reason for failing to raise this issue on appeal as plain error, particularly

20 where trial counsel requested that the jury be instructed on second degree murder.  (Ex. 42, p. 1054.)

21  Appellate counsel was ineffective for failing to object to the verdict form.  But for counsel's

22 ineffectiveness, Brown would have had a better outcome on appeal.

23  **B.**  **Appellate counsel were ineffective for failing to properly challenge the attempted**

24    **robbery instruction on appeal.**

25  The State must prove each element of each crime charged beyond a reasonable doubt.

26 Any instruction that improperly lessens the State's burden of proof denies a defendant his constitutional

27 right to due process.

28  Instruction 24 read as follows:

The crime of attempted robbery is committed by a person when he or she forms the intent to commit a robbery then performs an overt act or acts in furtherance of the commission of the robbery. Once a person forms the intent and commits the act in furtherance of the robbery, he is then guilty of an attempted robbery, whether he abandoned that attempt because of the approach of other persons or because of a change in his intentions due to a stricken conscience.

(Ex. 50, Instruction 24.)  This instruction improperly lowered the State's burden of proof.

In Nevada, to prove an attempt, the State must establish: "(1) the intent to commit the crime; (2) performance of some act towards its commission; and (3) failure to consummate its commission." Moffett v. State, 618 P.2d 1223, 1224 (Nev. 1980).  In this case, the State's burden of proof was lessened by the language "an overt act or acts in furtherance of the commission of the robbery."  The term "overt acts" was not defined.  In Nevada, an overt act means that the defendant took a "direct but ineffectual act toward the commission of the crime."  Darnell v. State, 558 P.2d 624, 626 (Nev. 1976).  The language in Instruction 24 permitted the jury to conclude that evidence of preparatory acts was sufficient to conclude Brown was guilty of attempted robbery and felony murder.  This lessened the State's burden of proof.

Likewise, the second sentence of the instruction was erroneous where it denied Brown the opportunity to have the jury instructed on the renunciation of the intent to commit the crime.  In this case where there was nothing taken from the store, the jury could have easily decided that the perpetrator abandoned the intent to rob the store.  Brown was entitled to have an instruction on this theory.

Appellate counsel challenged this instruction on appeal on the basis that it shifted the burden of proof to Brown.  (Ex. 59, p. 40.)  Appellate counsel failed to object to the instruction on the basis that the instruction lowered the State's burden of proof and inaccurately stated the law.  Appellate counsel had no strategic reason for failing to object to the instruction on these grounds and they were ineffective for failing to do so.  But for counsel's ineffectiveness, Brown would have had a better outcome on appeal.

**C.     Appellate counsel were ineffective for failing to challenge on appeal the testimony from the victim's family regarding preferred punishment.**

During their testimony in the penalty hearing, the victim's son and father urged the jury to impose the "maximum sentence" and "life without parole." (Ex. 45, p. 1391, 1395.)  His father

1   testified:

2       But I pray to the members of the jury that for- such a tragic, tragic cruelty, such a
        diabolical act which has been perpetrated by that man, he should be -- it is all up to you.
3       But at least the maximum punishment, the life imprisonment and that he should not be
        allowed to go out during the time of imprisonment.
4
        Because if he goes away after ten years, or 20 years, as you -- as you, Your Honor, would
5       like to say, I don't know, but I would at least pray for, pray before you that we are not --
        I know the torture that I felt as, after the death of this man. I don't want that, parents to
6       suffer like this, but at the same time I have heard the case also. I heard the words from
        all these ...
7
        I pray, I can only say that he should be given life imprisonment and he should not be
8       allowed to come either on bail or on parole, whatever it is, during that period.

9   (Ex. 45, p. 1391.)  Trial counsel did not object to the testimony.

10      Testimony by a victim's family's regarding its opinion of the defendant, the crime or the ultimate

11  punishment may violate the Eighth Amendment.   Also, while some victim impact evidence is

12  permissible, the trial court must still conclude that the evidence is relevant and admissible.

13      In this case, appellate counsel was ineffective for failing to challenge this opinion testimony by

14  the victim's sons as plain error.  They had no reasonable strategic reason for failing to do so, and Brown

15  was prejudiced on appeal.

16          **D.      Appellate counsel was ineffective for failing to challenge the motive instruction or
                    lack thereof.**
17

18          The trial court did not provide the jury with an instruction regarding motive.   Trial

19  counsel did not object, nor did she proffer her own instruction on motive.   In post-conviction, Brown

20  proffered the following motive instruction:

21      Motive is not an element of the crime charged and need not be shown. However, you
        may consider motive or lack of motive as a circumstance in this case. Presence of motive
22      may tend to establish the defendant is guilty. Absence of motive may tend to show the
        defendant is not guilty.
23

24  (Ex. 97; ex. 79, p. 52 n 13.)  Trial counsel testified at the evidentiary hearing she was unaware of the

25  availability of such an instruction and did not consider offering such an instruction to the court. (Ex. 70,

26  p. 39.)

27      A defendant is entitled to an instruction on his theory of defense.  Where Brown's defense was

28  to introduce reasonable doubt that a person named "Travis" killed the victim, the State failed to prove

20

that Brown killed the victim beyond a reasonable doubt.  Trial counsel was obligated to ensure that the jury instructions presented the jury with Brown's theory of defense, including that he lacked motive to kill the victim.  Appellate counsel was ineffective for failing to argue on appeal that the district court erred in not giving the motive instruction.  But for counsel's ineffectiveness, Brown would have had a better outcome on appeal.

**E.      Appellate counsel was ineffective for failing to challenge the flight instruction.**

The court instructed the jury as follows:

The presence or absence of a deliberate attempt to avoid apprehension or prosecution by a person after the commission of a crime is insufficient of itself to establish his or her guilt or innocence, but is a fact which, if proven, may be considered by you along with all other proven facts in deciding the question of guilt or innocence.

The weight, if any, to which such a circumstance is entitled is a matter for the jury to determine.

(Ex. 50, Instruction 28).  Trial counsel did not object to the instruction.  (Ex. 42.)

The State presented no evidence of flight, particularly where the State's theory included Brown returning to the scene to render first aid.  Under the circumstances, it was improper to instruct the jury on flight where there was no flight.  The trial court abused its discretion in instructing the jury on flight. Appellate counsel's failure to challenge this instruction on appeal deprived Brown of his right to the effective assistance of counsel.  But for counsel's ineffectiveness, Brown would have had a better outcome on appeal.

Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

## GROUND THREE

**The trial court violated Brown's right to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when it refused to provide instructions on the defense theory of the case and when it improperly instructed the jury.**

**Statement of Exhaustion:**      This claim, and its subparts (A)-(D), were presented in Brown's direct appeal proceedings.  (Ex. 59-61.) The Nevada Supreme Court reviewed the claims on their merits. (Ex. 62.)  Subparts (E)-(F) were presented in Brown's second state post-conviction proceedings, which

1    is still pending before the state courts. (Ex. 80.)

2        **Statement in Support of Claim:**

3    **A.     The trial court erred in refusing Brown's proffered instructions on his theory of
            defense.**

4

5            A defendant has a constitutional right to present his theory of defense at trial, and to have

6    the jury instructed on that theory of defense.  In Nevada, such an instruction is required, "no matter who

7    weak or incredible the evidence may be."  Brooks v. State, 180 P.3d 657, 662 (Nev. 2008).

8            In this case, Brown sought a jury instruction on second degree murder. (Ex. 42, p. 1054; ex. 43,

9    Instruction I.)   The State failed to prove that anything was stolen from the store, or that a robbery had

10   been committed. (Ex. 39, p. 908-09; ex. 37, p. 270, 280-81.)  Brown was able to demonstrate where the

11   money on his person came from. (Ex. 37, p. 376-79; ex. 39, p. 841.)  The State also failed to prove that

12   Brown killed the victim with premeditation and deliberation.  Instead, the facts demonstrated that Brown

13   entered the store after the victim was shot and attempted to administer aid.  (Ex. 37, p. 416, 435-36, 450,

14   453-54; ex. 42, p. 1171, 1211.) A jury could have reasonably concluded that under these facts, Brown

15   was guilty of second degree murder instead of first degree murder.  Brown was entitled to have the jury

16   instructed on this reasonable alternative theory and he was denied his due process rights when the trial

17   court failed to do so.

18   **B.     The reasonable doubt instruction violated Brown's right to due process.**

19           At Brown's trial, the trial court provided the following "stock" instruction to the jury:

20           A reasonable doubt is one based on reason.  It is not mere possible doubt,
             but is such a doubt as would govern or control a person in the more
21           weighty affairs of life.  If the minds of the jurors, after the entire
             comparison and consideration of all the evidence, are in such a condition
22           that they can say they feel an abiding conviction of the truth of the charge,
             there is not a reasonable doubt.  Doubt to be reasonable, must be actual,
23           not mere possibility or speculation.

24   (Ex. 50, Instruction No. 12.)[3]  Brown objected to the instruction and proffered his own. (Ex. 42, p. 1035-

25   36; ex. 43, Instruction A.)   The trial court rejected Brown's proffered instruction.  (Id.)

26

27           [3] Brown is aware of the Ninth Circuit Court of Appeals' decision in Ramirez v. Hatcher, 136

28   F.3d 1209 (9th Cir. 1998), which holds that this instruction does not violate the Constitution.  Brown
     raises this issue herein to preserve this issue for future federal review.

1   Trial counsel also requested that the trial court instruct the jury on the definition of "abiding

2   conviction," as the phrase is not one whose meaning is commonly understood. (Ex. 42, p. 1046; ex. 43,

3   Instruction D.)  The trial court refused to give the supplemental instruction. (Id.)

4   One of the bedrock principles of criminal justice and the constitutional right to a jury trial

5   requires that  the government prove each element of  criminal conduct beyond a reasonable doubt. First,

6   the "govern and control" language of the instruction actually defines "proof beyond a reasonable doubt,"

7   rather than the standard for the doubt itself.  That is, the amount of proof necessary for the government

8   to prove its case must meet the "govern and control" language. Contrarily, the  amount of doubt required

9   to acquit would be considerably less stringent.  The instruction, however, imposes the proof standard

10   onto the definition of doubt.  The result is an instruction that requires a higher standard for reasonable

11   doubt than for proof beyond a reasonable doubt, in complete contradiction of Constitutional principles

12   regarding burden of proof.

13    Secondly, the "govern and control" language of the instruction given by the trial court

14   impermissibly decreases the burden of proof.   The "doubt as would govern or control a person in the

15   more weighty affairs of life" standard calls for a balancing test, more akin to a preponderance of the

16   evidence standard than the beyond a reasonable doubt standard.  In states other than Nevada, courts have

17   found this language inappropriately trivializes the standard of proof.

18   Even a slight shifting or lightening of the state's burden in this case clearly violated Brown's

19   right to a fair trial.   The confusing language within the instruction further compounded this error.  A

20   constitutionally insufficient reasonable doubt instruction violates the Due Process Clause of the

21   Fourteenth Amendment and is never harmless error.

22   **C.   The attempted robbery instruction violated Brown's right to due process.**

23   The State must prove each element of each crime charged beyond a reasonable doubt.

24   Any instruction that improperly shifts the burden of proof denies a defendant his constitutional right to

25   due process.

26   Instruction 24 read as follows:

27   The crime of attempted robbery is committed by a person when he or she forms the intent
to commit a robbery then performs an overt act or acts in furtherance of the commission

28   of the robbery. Once a person forms the intent and commits the act in furtherance of the

1  robbery, he is then guilty of an attempted robbery, whether he abandoned that attempt
2  because of the approach of other persons or because of a change in his intentions due to a stricken conscience.

3  (Ex. 50, Instruction 24.) This instruction improperly shifted the State's burden of proof to Brown. Brown

4  objected to the instruction as improperly shifting the burden to him to establish why he abandoned his

5  intent. (Ex. 42, p. 1039.) The trial court denied Brown's objection. (Ex. 42, p. 1041.)

6  The second sentence in the instruction: "Once a person forms the intent and commits the act in

7  furtherance of the robbery, he is then guilty of an attempted robbery, whether he abandoned that attempt

8  because of the approach of other persons or because of a change in his intentions due to a stricken

9  conscience," improperly shifted the burden of proof to Brown to prove why he abandoned his intent, if

10  he did.

11  Even a slight shifting or lightening of the state's burden in this case clearly violated Brown's

12  right to a fair trial.  A constitutionally insufficient reasonable doubt instruction violates the Due Process

13  Clause of the Fourteenth Amendment and is never harmless error.

14  **D.     The trial court erred in refusing to give an instruction on the limitations of DNA evidence.**

15

16  Jury instructions which result in a fundamentally unfair trial violate due process.

17  Evidence was admitted against Brown as the partial donor of DNA on a knit cap found near the

18  crime scene, and on pants and a shirt found in the vehicle.  (Ex. 39, p. 752-56.)  The jury was not

19  instructed on the weight to which such evidence should be entitled.  Trial counsel requested such an

20  instruction regarding the weight and reliability of DNA evidence.  (Ex. 42, p. 1047; ex. 43, Instruction

21  E.)  The trial court rejected this instruction as being covered by other instructions.  (Ex. 42, p. 1047.)

22  There is a risk with DNA evidence that the jury will equate a positive DNA match with guilt,

23  rather than exploring other innocent reasons for the DNA's existence.  The failure to explain the

24  relevance of the DNA evidence deprived Brown of due process.

25  **E.     The trial court erred in giving the flight instruction.**

26  Jury instructions which result in a fundamentally unfair trial violate due process.

27  In this case, the court instructed the jury as follows:

28  The presence or absence of a deliberate attempt to avoid apprehension or prosecution by

1   a person after the commission of a crime is insufficient of itself to establish his or her
2   guilt or innocence, but is a fact which, if proven, may be considered by you along with
    all other proven facts in deciding the question of guilt or innocence.

3   The weight, if any, to which such a circumstance is entitled is a matter for the jury to
    determine.
4

5   (Ex. 47, Instruction 28).  Trial counsel did not object to the instruction.  (Ex. 42.)

6   The State presented no evidence of flight, particularly where the State's theory included Brown

7   returning to the scene to render first aid.  Under the circumstances, it was improper to instruct the jury

8   on flight where there was no flight.  The trial court abused its discretion in instructing the jury on flight.

9   This improper jury instruction violated Brown's right to due process.

10   **F.    The trial court erred in permitting Officer Knight to testify.**

11   NRS 50.275 provides:

12   If scientific, technical or other specialized knowledge will assist the trier
     of fact to understand the evidence or to determine a fact in issue, a
13   witness qualified as an expert by special knowledge, skill, experience,
     training or education may testify to matters within the scope of such
14   knowledge.

15   Officer Knight was permitted to testify as an expert although he was not qualified as an expert.  The

16   problem with permitting police officers to testify as experts is that their testimony often does not comply

17   with due process requirements of reliability and relevance.  Here, Knight's testimony was not reliable

18   as he was not qualified as an expert.  Brown was prejudiced as a result, in violation of his federal

19   constitutional right to due process.

20   The State proffered the testimony of Officer Knight as an officer with experience in crime scene

21   reconstruction.  (Ex. 38, p. 710-11.)  The prosecutor argued Knight's testimony was relevant to prior

22   testimony from three witnesses who saw a tan car parked in the store's parking lot, and which left skid

23   marks or pealed out of the area.  (Id.)  At most, Knight could testify that the tire marks on the scene were

24   consistent with the tires on Brown's car.

25   Brown objected to the testimony as "confusing, a waste of time for the jury and it's not relevant."

26   (Id., p. 712.)  Trial counsel argued that the fact that Brown was at that location and may have left a mark

27   earlier in the day does not indicate that Brown was present later in the day when the murder occurred.

28   (Id.)  The trial court overruled Brown's objection, finding the testimony tended to corroborate the

1    testimony of prior witnesses.  (Id.)

2    However, Knight's testimony did not corroborate the testimony of other witnesses and was, in

3    fact, more prejudicial than probative and irrelevant.  Knight testified that he was assigned to the traffic

4    investigation branch of the Reno Police Department for two to three years. (Ex. 39, p. 722.) He outlined

5    his experience and training.  (Ex. 39, 722-23.)  Knight testified on several occasions that Brown's

6    vehicle had a manual transmission.  (Ex. 39, p. 723, 731.)  However, the trial exhibits showed the

7    transmission was an automatic. (Ex. 100.) This testimony was important because Knight testified it is

8    much easier to leave a scuff mark with a manual transmission.  (Ex. 39, p. 729, 731-32.)  Knight was

9    also unable to testify as to the date or time on which the marks were made.  (Ex. 39, p. 731-32.)

10   It is entirely possible that Knight was not testifying to the specifics of Brown's car, and his

11   testimony was improperly admitted.  Admission of the testimony violated Brown's right to due process

12   where the jury heard evidence which was not reliable and which was more prejudicial than probative.

13   Any contrary decision by a state court would be contrary to, or an unreasonable application of,

14   clearly established federal law, and/or would involve an unreasonable determination of the facts in light

15   of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

16                                              **GROUND FOUR**

17   **Brown was denied his constitutional right to due process under the Fifth, Sixth and**
     **Fourteenth Amendments to the United States Constitution when the State used**
18   **altered evidence, without disclosing the alterations to the defense, to obtain a**
     **conviction against Brown.**
19

20   **Statement of Exhaustion:**    This claim was presented in Brown's second state habeas

21   proceedings.  (Ex. 80.)

22   **Statement in Support of Claim:**

23   Brown's constitutional right to a due process was violated when the State knowingly introduced

24   evidence against Brown in the form of an altered surveillance tape, and where trial counsel was not

25   advised of the alterations made to the tape.

26   The State introduced the surveillance tape of the market as evidence against Brown.  Trial

27   counsel hired a videographer, William Stephens, to examine the surveillance videos. (Ex. 40, p. 941.)

28   Stephens admitted the videotape he was provided by counsel was of very poor quality. (Ex. 40, p. 941.)

The video was of such poor quality, he could not determine the race of persons on the video.  (Ex.40, p. 956.)  The creation of a poor copy resulted in "tearing" or "streaking" on the tape.  (Ex. 40, p. 945.)  As a result, Stephens could not determine if there was a break in the line running down the pair of pants of the perpetrator in the video.  (Ex. 40, p. 965-66.)  Trial counsel did not request that the original tape be released to her expert for testing, and Stephens was not shown the original tape until the morning of trial. (Ex. 40, p. 942.)

At the evidentiary hearing on the state habeas petition, Brown's expert, Charles Palm, an engineer and photogrammeter, testified that the original excerpted video segments had been altered, in that they were cropped, the images appeared to be stretched, and some sort of brightness or contrast enhancement was employed.  (Ex. 69, p. 43-44, 56-7; exs. 98-99.)  In other words, the excerpted video used at trial was not a true and accurate copy of the original surveillance video.  (Ex. 69, p. 53.)  Such enhancements to the video would affect the accuracy of an expert's measurements regarding the height of individuals appearing on the video. (Ex. 69, p. 44.) The enhancements could also change the appearance of clothing on a particular individual shown in the video.  (Ex. 69, p. 44, 55-6.)  Despite the attempted enhancements to the video, Palm testified that no one could reliably identify Brown as the perpetrator, because the video was of too poor quality to make such an identification.  (Ex. 69, p. 50.)  Palm also testified that the distorted images made it "very difficult, almost impossible, to extract valid camera parameters," and therefore any measurements will be less accurate than "clean, raw data." (Ex. 69, p. 55.)

It was a violation of Brown's constitutional right to due process that his conviction was obtained when the State knowingly altered its most critical piece of evidence, the surveillance video.  The alterations to the video supported the State's theory that Brown was the perpetrator, where the distortions tended to alter the appearance of clothing worn by persons on the video, and where the changes prohibited any reliable height assessments. Brown's conviction cannot stand based upon the presentation of this false evidence to the jury.

Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

**GROUND FIVE**

**Pervasive prosecutorial misconduct so infected the trial as to deny Brown the right to a fair trial under the Fourteenth Amendment to the United States Constitution.**

**Statement of Exhaustion:**    This claim was presented in Brown's direct appeal proceedings. (Ex. 59-61.)  The Nevada Supreme Court reviewed the claim on its merits.  (Ex. 62.)  This ground is exhausted.

**Statement in Support of Claim:**

A defendant's right to due process is violated when misconduct by a prosecutor is so repugnant and prejudicial that it calls into question the fundamental fairness of the trial and verdict of the jury, in violation of the Fourteenth Amendment to the United States Constitution.

The prosecutor in this case committed repeated misconduct throughout the guilt and penalty phases in violation of Brown's right to due process.  The misconduct in this case began prior to trial. It became so bad that trial counsel was compelled to make the following record to the court:

> I have one other-motion I would like to address to the Court due to last Thursday's events in court. I would like to point out that it's improper and prosecutorial misconduct to ridicule the defendant or his case. That is <u>Earl v. State</u>, 111 Nevada 1304, a 1995 case. In that particular case the prosecution referred to the defendant's testimony as malarky. Those actions were held by the Nevada Supreme Court to deprive the defendant of a fair trial. In <u>Barron v. State</u>, 105 Nevada 777, a 1989 case, the prosecutor's comment that he had oceanfront property in Tonopah for sale equated to a violation of the duty to not belittle or ridicule defendants. Under <u>McGuire v. State</u>, 100 Nevada 153, a 1984 case, the prosecutor's comment disparaging defense counsel constituted misconduct.
>
> In that particular case, a quote from the case is appropriate. The Nevada Supreme Court stated that disparaging-comments have absolutely no place in a courtroom and clearly constitute misconduct.
>
> Based upon that and those cases, I would like to advise the Court that if I am treated as I was last Thursday, called a liar repeatedly -- today has been much more normal as far as litigation goes -- I will ask that the jury be excused, and on each and every occasion I will be making a record and moving for a mistrial. It will be a very lengthy trial that way because it is not appropriate to be subjected to that type of behavior. And I just wanted to make the Court aware of that.

(Ex. 29, p. 21-22.)

It is improper for a prosecutor to offer his opinions to the jury.  It is also improper for a prosecutor to disparage the defendant, his counsel, or his defense.  In this case, the prosecutor continued to degrade defense counsel, defense witnesses and Brown's entire defense at trial.  The prosecutor

repeatedly referred to Brown's defense as one of a "phantom friend," or a "story." (Ex. 40, p. 1015; ex. 42, p. 1161, 1186.) The prosecutor accused Brown of faking his grand mal seizure, which occurred after a brutal police restraining procedure. (Ex. 42, p. 1222-23.) He also accused Brown and his family of lying and "engaging in trickery" and attempting to "bamboozle" the jury. (Ex. 42, p. 1211, 1218, 1236, 1240; ex. 45, p. 1293, 1418.) During closing arguments, the prosecutor described Brown as a "rotten, malignant, evil person." (Ex. 45, p. 1419.)

An accused has the right to remain silent under the Fifth Amendment to the United States Constitution. In this case, the prosecutor improperly commented on Brown's right to remain silent when he opined that "you didn't try very hard, did you," referring to Brown's discussion with detectives. (Ex. 42, p. 1249.) The prosecutor also committed misconduct when he questioned a police officer whether he attempted to try to have Brown try on a shirt to see if it fit. (Ex. 39, p. 917.)

The prosecutor engaged in improper argument concerning penalty. It is highly improper and prosecutorial misconduct for a prosecutor to make an erroneous argument as to the law. It is also improper for the prosecutor to offer the purported imprimatur of the government concerning a particular penalty. The prosecutor informed the jury that Brown had already received "the benefit of the doubt" when "his life [wa]s spared," apparently insinuating that Brown already received lenity from the State when they did not file a notice of intent to seek the death penalty. (Ex. 45, p. 1420-21.)

Brown contends that the prosecutor's pervasive misconduct throughout the stages of his trial deprived him of a fair trial.

Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. See 28 U.S.C. §2254(d)(1) and (2).

### GROUND SIX

**Brown is entitled to a new penalty hearing where the sentence was disproportionate to the crime, in violation of the Eighth Amendment to the United States Constitution.**

**Statement of Exhaustion:**     This claim was presented in Brown's direct appeal proceedings. (Ex. 59-61.) The Nevada Supreme Court reviewed the claim on its merits. (Ex. 62.) This ground is exhausted.

**Statement in Support of Claim:**

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.

There can be no doubt that Mr. Bains' death was tragic.  However, a sentence of life without the possibility of parole for Brown is disproportionate under the circumstances in this case.  Such a sentence is unfair where the sentence is obtained upon the misconduct of the prosecutor and upon the jury's animosity towards trial counsel.

Brown was nineteen years old at the time he was charged with the crimes in this case.  He was gainfully employed beginning at the age of fifteen.  (Ex. 45, p. 1398.)  He enjoyed tremendous family support.  (Ex. 45, p. 1399-1411.)  He attempted to administer aid to the victim.  (Ex. 37, p. 416, 435-36, 450, 453-54; ex. 42, p. 1171, 1211.)  A lesser sentence was appropriate in this case.

However, the prosecutor's misconduct and the jury's note indicating personal offense to comments made by trial counsel prevented resulted in an unfair sentence being imposed against Brown.  During closing arguments, the prosecutor described Brown as a "rotten, malignant, evil person."  (Ex. 45, p. 1419.)  He demeaned Brown and accused him of "bamboozl[ing]" the jury.  (Ex. 45, p. 1418.)

The deprivation of Brown's due process was further compounded by the jury sending out the following note to counsel and the judge, shortly before handing down its penalty verdict:

> Your Honor, we the jury take offense to the comment made by the defense counsel, the unprofessional accusations, plural, impugning the integrity of this jury reaching its verdict. It was a  unanimous decision. The overall and insurmountable evidence and decision in our verdict required 100 percent participation of all jurors. This decision was not made lightly or in haste. Douglas A. Davis. And it is signed by, number one, Joseph Correia, Timothy Tapp, Charles Snell, Nancy Whitten, Mercy Nichovich, Dotty Stephenson, Frederick Allen Davis, Gary Klemne, Gerald Koch, and Stephanie Burke.

(Ex. 45, p. 1430; ex. 46.)  Ten of the twelve jurors on the jury signed the note.  Shortly thereafter, the jury returned a verdict of life without the possibility of parole.  (Ex. 48.)

Under the circumstances in this case, Brown's sentence violates the Eighth Amendment which requires that a sentence be proportionate to the crime charged.

Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

**GROUND SEVEN**

**The trial court erred in denying Brown's motions to suppress evidence in violation of his rights to due process and to be free from unreasonable searches and seizures under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.**

**Statement of Exhaustion:** This claim and its subparts were presented in Brown's direct appeal proceedings. (Ex. 59-61.) The Nevada Supreme Court reviewed the claims on their merits. (Ex. 62.) This ground is exhausted.

**Statement in Support of Claim:**

A.   **The search warrant issued on June 24, 2000 failed to comply with Brown's Fourth and Fourteenth Amendment rights to be free from unlawful searches and seizures.**

Brown has a constitutional right to be free from unlawful searches and seizures.  A search warrant is constitutionally deficient if it lacks particularity or is overbroad.  The June 24, 2000 search warrant was constitutionally invalid.  The telephonically obtained search warrant did not contain a statement of probable cause and the probable cause affidavit was not properly attached.  (See Exs. 93-94.) All evidence obtained from the 1993 Subaru and the residence at 914 Wilkinson, Reno should have been suppressed.

Furthermore, Brown's vehicle was improperly searched at the scene prior to the police obtaining a warrant.  Videotape surveillance from inside Bains Market showed that police entered Brown's car while it was parked at the store.[4] (Ex. 29, p. 4-5; ex. 18.) There were no exigent circumstances excusing the failure to obtain a warrant.  All evidence obtained from the 1993 Subaru should have been suppressed.

Brown filed a motion to suppress all evidence taken from Brown's vehicle.  (See Ex. 18.)  The trial court considered Brown's contentions at a hearing.  (See Ex. 28, p. 4-97.) Despite clear indications that police illegally searched the vehicle both at Bains Market and later under an invalid warrant, the trial court concluded that police entered Brown's car upon seeing the gun in plain view, and that a further search occurred after securing a warrant.  (See Ex. 30, p. 5-6.)

---

[4] Copies of the taped admitted at trial have been requested from the trial court and will be filed upon receipt.

31

**B.     The August 8, 2000 search of Brown's car was unlawful and the evidence should have been suppressed.**

All items obtained from the vehicle on August 8, 2000 were the result of an illegal warrantless search and should have been suppressed.  Warrantless searches are per se unreasonable under the Forth Amendment subject only to a few specifically established and well delineated exceptions.  No such extraordinary circumstances existed here.

The State obtained only one search warrant for Brown's car, issued on June 24, 2000.  Under Nevada law, search warrants, if valid, are only in effect for ten days.  Nev. Rev. Stat. 179.075.  The June 24, 2000 warrant merely allowed the State to search the car for specific items of evidentiary value.  The warrant did not include the car itself as evidence.  (Ex. 93.)  The police could not retain possession of the vehicle indefinitely.  The car, itself, was not of evidentiary value.  Any items taken from the 1993 Subaru after the warrant was served were illegally obtained and should have been suppressed.

Brown made an oral motion to suppress the evidence obtained in the August 8, 2000 search based upon the prejudicial nature of the evidence and upon the illegal search itself.  (Ex. 28, p. 113-14.)  The Stipulation executed by defense counsel Lunt did not agree to admission of any items of evidence.  (Ex. 28, p. 117.)  The trial court denied Brown's motion without allowing argument or briefing on the issue, finding the search was done with consent of Brown through the presence of his counsel.  (Ex. 28, p. 116-17.)  The trial court went on to state that "[i]t doesn't matter what happened on the August 8 search warrant."  (Ex. 29, p. 19.)

The State had no authority to hold the vehicle in the first place.  Any stipulation for release of the car was illegal, and the evidence should have been suppressed.

**C.     The trial court's ruling to admit evidence of Brown's possession of a box cutter and a photograph in which he is holding a gun was improper, resulted in a fundamentally unfair trial for Brown, and denied him his due process of law.**

Brown's constitutional rights to a fundamentally fair trial and due process of law under the Fifth and Fourteenth Amendments were impeded by the mechanical application of state procedural and evidentiary rules by the trial court - absent consideration of federal constitutional implications.  The trial court erred in admitting evidence which initially had been ruled inadmissible as irrelevant and prejudicial.

1    Brown moved to suppress the box cutter and photograph in a written motion, arguing they were

2    more prejudicial than probative. (Ex. 16.)  At the pre-trial motion hearing, the trial court ruled the box

3    cutter inadmissible as irrelevant and prejudicial in light of the September 11, 2011 terrorist attacks. (Ex.

4    29, p. 20.)  The court reserved ruling on admission of the photograph.  (Id.)

5    On April 2, 2002, the State filed a motion to reconsider the trial court's ruling. (Ex. 31.)  The

6    trial court again denied the prosecutor's motion to reconsider.  (Ex. 36, p. 7.)  However, the court

7    changed its position and during trial admitted the evidence. (Ex. 42, p. 1266.)  The court indicated that

8    the State could inquire about the box cutter if Brown testified and had an opportunity to explain the

9    purpose in possessing the box cutter so as to diffuse any terrorist implications associated with box cutters

10    as a result of the events of September 11. (Ex. 39, p. 845-46.)  The box cutter was admitted after Brown

11    testified in the defense case.  (Ex. 42, p. 1196, 1197, 1266.)

12    The defendant had a right to rely upon the ruling of the court in preparation of his case.  Instead,

13    one of the last items of evidence admitted at trial, which was ruled inadmissible, was admitted.  (Ex. 42,

14    p. 1266.)  The box cutter was not relevant, was more prejudicial than probative, and was intended to

15    create an emotional response from the jury.

16    Prior to trial, the district court reserved ruling on the photograph found in the search of Brown's

17    residence depicting Brown holding the murder weapon, although the court indicated that it did not

18    believe the gun was relevant to the State's case-in-chief.  (Ex. 29, p. 20.)  The trial court specifically

19    found that the photograph would be inadmissible unless and until the defendant raised the defense of

20    mistake, accident or identity of the gun or the gun not belonging to the defendant.  (Id.)  However, at

21    trial, the court reversed this ruling and admitted the photograph.  (Ex. 40, p. 875-6.)  None of these

22    defenses was raised, yet the court admitted this three year old photograph of Brown during the State's

23    case in chief.

24    Both the box cutter and the photograph were improperly admitted.  Brown had some right to rely

25    upon pre-trial rulings and the continued alteration of those rulings prevented Brown from being able to

26    properly assess his case.  Brown had a right to be able to adequately prepare his defense.  The jury's

27    reliance on the improperly admitted evidence violated Brown's right to due process and a fair trial.

28    Where constitutional rights related to a determination of guilt are implicated, state procedural and

1    evidentiary rules may not be  applied without consideration of the federal constitutional implications.

2        **D.    Any evidence obtained at the Washoe County Medical Center should have been**
         **suppressed.**
3

4            The prosecution must introduce sufficient proof so that a reasonable juror could find that

5    the items admitted into evidence are in substantially the same condition as when they were seized.  It

6    is a violation of due process under the Fifth and Fourteenth Amendments to admit evidence which may

7    have been altered.  The State was unable to establish a sufficient chain of control and thereby show that

8    the evidence obtained at the Washoe County Medical Center was in substantially the same condition.

9    Brown was denied his right to suppression of illegally obtained evidence and due process of law.

10            Various police officers testified during the trial regarding the evidence obtained while at the

11   Medical Center.  The testimonies clearly established that the evidence had been tampered with while at

12   the Medical Center.  The items were bagged and left unattended in a hospital room which was not

13   secured in any fashion.  (Ex. 38, p. 540-46, 565, 572-73, 594-95, 600, 623-27.)  For example, no officer

14   could explain how a necklace came to be contained in the package of clothing of Brown or who owned

15   the necklace, marked trial exhibit 23-A.  (Ex. 38, p. 543, 626-27.)  No proper chain of custody and

16   control by police was established.  (Ex. 38, p. 627.)  All evidence obtained at the Washoe County

17   Medical Center should have been suppressed.  Brown objected to the admission of the evidence at trial,

18   but was overruled.  (Ex. 38, p. 544-45, 624-27.)

19            It was not until the testimony of the officers at trial that it became apparent that evidence which

20   indicated only the access and control of one officer was really under the partial observation of six

21   officers and open to access.  (Ex. 38, p. 541-42, 544-46.)  Admission of this unreliable testimony and

22   evidence resulted in a denial of Brown's constitutional right to due process of law.

23       **E.    Brown's statements were obtained in violation of his right to remain silent and his**
         **right to an attorney, and they should have been suppressed.**
24

25            A defendant who gives a confession must do so voluntarily, knowingly, and intelligently.

26   Brown did not unequivocally waive his rights per Miranda v. Arizona, 384 U.S. 436 (1966).  A suspect

27   who requests counsel during a custodial interrogation is not subject to further interrogation until counsel

28   is provided.  Upon invocation, the authorities were required to "scrupulously honor" Brown's right to

1    cut off questioning, which they failed to do.

2        Where a defendant's confession is involuntary, its use against him violates due process under the

3    Fifth and Fourteenth Amendments to the United States Constitution.  Brown was initially arrested on

4    the misdemeanor charge of obstructing and resisting an officer (O&R).  After being treated at the

5    hospital, Brown was then transported to the police station and was interviewed by police.  (See Ex. 95.)

6    The police officer was vague when he discussed the subject matter of the interview.  There is, initially,

7    no mention of the pending murder investigation.  (Ex. 95, p. 3.)  Brown initially waived his right to

8    counsel only as to the misdemeanor charge of O&R, not a murder charge.  He did not unconditionally

9    waive his right to counsel.

10       Brown asked the officer if he needed a lawyer, noting that "if I'm only being charged with O&R,

11   I don't need one." (Ex. 95, p. 4.)  Ultimately, Brown noted that the detective was turning things against

12   him, and stated that "if you're gonna keep doing this I do want a lawyer.  This is wrong.  This is so

13   wrong." (Ex. 95, p. 21.)

14       Even after Brown unequivocally asserted his right to an attorney, the police officer continued

15   to converse with Brown.  The officer also knew of Brown's intoxication level.  Brown's testimony at

16   trial indicated he "still felt the effects of alcohol" during the interview.  (Ex. 42, p. 1184.)  The

17   intoxication of Brown prevented a voluntary waiver of his Miranda rights.  Yet, the trial court found that

18   Brown knew the police wanted to talk about more than the O&R and denied Brown's motion to suppress

19   his statements made during the interview.  (Ex. 13.)  The court concluded that Brown invoked his right

20   to counsel at page 21 of the interview, and suppressed all statements beyond that point.  (Ex. 13.)

21   However, the damage was done in the preceding twenty-one pages.

22       The district court ruled improperly on the question of suppressing the statements of Brown.

23   Failure to recognize and consider the circumstances under which Brown's statements were made

24   constitutes a denial of Brown's Fifth Amendment right to remain silent and his right to an attorney.

25       Any contrary decision by a state court would be contrary to, or an unreasonable application of,

26   clearly established federal law, and/or would involve an unreasonable determination of the facts in light

27   of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

28   / / /

**GROUND EIGHT**

**The State's discovery violations affected Brown's ability to present a defense in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.**

**Statement of Exhaustion:**     This claim was presented in Brown's direct appeal proceedings. (Ex. 59-61.)  The Nevada Supreme Court reviewed the claim on its merits.  (Ex. 62.)  This ground is exhausted.

**Statement in Support of Claim:**

The prosecution has a duty to disclose favorable evidence to the defendant.  This duty includes disclosing evidence available only in police files and not in the prosecutor's file.  Failure to do so violates a defendant's right to due process.

The State of Nevada violated its duty to disclose evidence to Brown prior to trial.  First, the prosecution failed to turn over the evidence indicating the actual chain of custody of the evidence retrieved from the hospital.  At trial, trial counsel determined that multiple officers failed to sign evidence logs for the seized evidence.  (Ex. 38, p. 518-19, 540-42, 544-6, 595-600, 622, 627.) Moreover, the prosecution failed to advise Brown that Officer Rulla did not complete the probable cause form that he signed and executed.  (Ex. 38, p. 512-13.)

Second, the prosecutor failed to provide advance notice to defense counsel of the substitution of expert witness, David Atkinson.  A mere two weeks before the start of trial, the prosecutor announced its ballistics expert was unavailable to testify and another expert would be retesting the evidence and submitting a new report.  (Ex. 32.)   A one-page document authored by Atkinson was provided to counsel on March 14,  2002.  (Ex. 32A.)  Trial counsel contacted the prosecutor to determine whether additional records existed to support the document.  (Ex. 59, p. 11.)  The prosecutor denied any additional records existed.  However, on April 4, 2002, two days before trial, the prosecutor provided trial counsel a set of photographs dated March 26, 2002.  (Ex. 59, p. 11; ex. 32.)  Brown filed an emergency motion to exclude the evidence and in the alternative to dismiss the charges.  (Ex. 32.)

The trial court heard argument on the motion on the day of trial.  (Ex. 36, p. 7-13, 15-17.)  The court ordered Brown to consult with an expert.  (Id.)  This was to occur contemporaneously with trial counsel's obligations of conducting Brown's defense at trial.  Ultimately, the trial court denied Brown's

1    motion.  (Ex. 36, p. 20.)

2        Third, the State of Nevada violated its duty to disclose evidence to Brown when an expert

3    witness did not test evidence until the middle of trial, and where Brown was not provided with a report

4    to which he could object or provide an expert in a timely fashion so as to prepare a defense.  Part of

5    Brown's defense was to challenge the State's cursory investigation by the police.  Dave Billau of the

6    crime lab testified for the State during its case-in-chief.  (Ex. 38, p. 613).  Billau testified that he

7    obtained a latent fingerprint from the telephone outside the store, but that he had not examined the prints

8    to determine if they had evidentiary value.  (Ex. 38, p. 630-32, 651.)

9        The next day, the prosecution moved to have Billau testify regarding his examination of the

10   recovered prints the night before.  (Ex. 39, p.714.)  Trial counsel objected to the late notice, however the

11   court overruled the objection.  (Ex. 39, p. 715-6.)  Trial counsel was never provided a supplemental

12   report concerning the new testing.  (Ex. 59, OB, p. 12.)

13       The prosecution's failure to disclose this evidence to Brown until it was too late to mount a

14   defense to the evidence violated Brown's right to due process and confrontation.

15       Any contrary decision by a state court would be contrary to, or an unreasonable application of,

16   clearly established federal law, and/or would involve an unreasonable determination of the facts in light

17   of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

18                                **GROUND NINE**

19       **The design of the courtroom violated Brown's right to confront the witnesses**
     **against him and his right to due process in violation of the Fifth, Sixth and**
20   **Fourteenth Amendments to the United States Constitution.**

21       <u>Statement of Exhaustion:</u>     This claim was presented in Brown's direct appeal proceedings.

22   (Ex. 59-61.)  The Nevada Supreme Court reviewed the claim on its merits.  (Ex. 62.)  This ground is

23   exhausted.

24       <u>**Statement in Support of Claim:**</u>

25       Brown has a right to confront the witnesses against him.  He also has a right to due process.

26   Those rights were violated in this case where the use of visual aids and exhibits prevented Brown from

27   conversing with his counsel and from viewing the evidence against him.

28   / / /

1     The prosecution's trial tactics caused witnesses to be away from the witness stand.  At one point,

2  trial counsel requested that the witness return to the stand, as the setup was forcing her to spend too

3  much time away from Brown.

4          Your Honor, it is difficult when spending most of the trial away from my client.  If he has
          questions for me or comments, I'm missing a lot of it.
5
          I'm not trying to be difficult, but a lot of witnesses have been testifying from the floor
6          with Mr. Hall by you, me in the corner.

7  (Ex. 38, p. 579.)

8     The setup not only prevented Brown from communicating with counsel, he was also denied the

9  opportunity to view evidence against, him.  In particular, Brown was unable to see the surveillance video

10  which was repeatedly used against him at trial.  (Ex. 42, p. 1238.)  The trial court could also not see the

11  evidence as a result of the use of screens and other visual aids.  (Ex. 38, p. 496; ex. 40, p. 886, 890, 971.)

12     Brown was denied his right to mount a meaningful defense in his case where he was unable to

13  confront the evidence or witnesses against him.  His due process rights were denied.

14     Any contrary decision by a state court would be contrary to, or an unreasonable application of,

15  clearly established federal law, and/or would involve an unreasonable determination of the facts in light

16  of the evidence presented at the state court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

17                              **GROUND TEN**

18
          **Brown is in custody in violation of his right to due process and fair trial as
19       guaranteed by the Fourteenth Amendment to the United States Constitution due to
          the effect of cumulative error.**
20

21     **Statement of Exhaustion:**     This claim was presented in Brown's direct appeal proceedings.

22  (Ex. 59-61.)  The Nevada Supreme Court reviewed the claim on its merits.  (Ex. 62.)  This ground is

23  exhausted.

24     **Statement in Support of Claim:**

25     The doctrine of cumulative error mandates relief for Brown.  The combination of judicial error,

26  prosecutorial misconduct and the ineffective assistance of trial counsel, when viewed in light of the state

27  court record, constitute cumulative error warranting relief from the numerous violations of constitutional

28  rights suffered by Brown in this matter.

### III.

### **PRAYER FOR RELIEF**

Accordingly, Petitioner Brown respectfully requests that this Court:

1.     Issue a writ of habeas corpus to have Brown brought before the Court so that he may be discharged from his unconstitutional confinement and sentence;

2.     Conduct an evidentiary hearing at which proof may be offered concerning the allegations in this First Amended Petition and any defenses that may be raised by respondents and;

3.     Grant such other and further relief as, in the interests of justice, may be appropriate.


DATED this 23rd day of January, 2012.

LAW OFFICES OF THE
FEDERAL PUBLIC DEFENDER


By:     /s/ Megan C. Hoffman
MEGAN C. HOFFMAN
Assistant Federal Public Defender

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that he is an employee in the office of the Federal Public

3  Defender for the District of Nevada and is a person of such age and discretion as to be competent to

4  serve papers.

5      That on January 23, 2012, he served a true and accurate copy of the foregoing to the United

6  States District Court, who will e-serve the following addressee:

7

8  Jared M Frost
   Nevada Office of the Attorney General
   100 N. Carson St.
9  Carson City, NV 89701-4717

10

11                                        /s/ Adam Dunn
12                                        An Employee of the Federal Public
                                          Defender's Office
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28