# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BEAU EZEKIEL BROWN,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.,*

    *Respondents*.

2:11-cv-00790-KJD-NJK

ORDER

This represented habeas matter comes before the Court on respondents' motion (#23) to dismiss for lack of complete exhaustion and petitioner's motion (#29) to stay.  While the parties disagree as to the extent to which the counseled amended petition is unexhausted, there is no dispute that the amended petition is not fully exhausted at this juncture.  A principal dispute in the briefing is directed to petitioner's request for a stay of the federal proceedings while he completes currently-pending proceedings on a second state post-conviction petition.  Proceedings on the second state petition currently are on appeal in the Supreme Court of Nevada.

### *Background*

Petitioner Beau Ezekiel Brown seeks to set aside his July 30, 2002, conviction, pursuant to a jury verdict, of murder with the use of a firearm, attempted robbery with the use of a firearm, and burglary.  He was sentenced to two consecutive life sentences without the possibility of parole on the murder conviction and weapon enhancement along with lesser term sentences on the remaining charges imposed concurrently with the foregoing.

1       The Supreme Court of Nevada affirmed the judgment of conviction in a January 8,
2   2004, order of affirmance.  The remittitur issued on February 3, 2004.[1]

3       On January 26, 2005, petitioner, through counsel, filed a timely state post-conviction
4   petition.  Counsel initially proceeded as retained counsel.  However, subsequently, on
5   December 21, 2007, the state district court allowed counsel to withdraw as retained counsel
6   and appointed the same attorney to represent petitioner based on, *inter alia*, his indigency.

7       Following an evidentiary hearing, the state district court denied post-conviction relief
8   in findings and conclusions entered on May 7, 2010.  Petitioner, through counsel, timely
9   appealed.

10      On or about September 8, 2010,[2] while the appeal from the denial of the first state
11  petition still was pending, petitioner mailed a *pro se* state post-conviction petition to the state
12  district court clerk for filing.  The state court clerk filed the petition and accompanying papers
13  on October 12, 2010.  The petition was styled as a "successive (second) petition."  Petitioner
14  sought to pursue claims that state post-conviction counsel on the first petition had failed to
15  pursue despite petitioner's alleged request that he do so.  Brown maintained that he was
16  seeking to pursue the additional claims at the first juncture that he could pursue the claims
17  *pro se* due to his having been represented previously by counsel in the state district court.

18      By an order filed on January 10, 2011, the state district court stayed the second state
19  petition pending the outcome of the appeal on the first petition.

20      The Supreme Court of Nevada thereafter affirmed the denial of the first petition in a
21  May 9, 2011, order of affirmance.

22      Only three days later, on or about May 12, 2011, petitioner mailed a timely *pro se*
23  federal habeas petition styled as a protective petition to the Clerk of this Court for filing.  He
24  additionally submitted, *inter alia*, motions for the appointment of counsel and for a stay.

25  

26      [1]Indexed chronological state court record exhibits corresponding to the procedural recital herein may
27  be found at ## 16-19, 26 & 28.  The Court in the main dispenses with making specific record cites herein as
    to essentially undisputed and/or readily confirmed procedural background.

28      [2]See #19, Ex. 80, at electronic docketing page 48 (certificate of mailing).

Petitioner sought to stay the protective federal petition so that he could pursue the second state petition that had been stayed by the state district court during the pendency of the appeal from the denial of the first state petition. Petitioner filed the protective federal petition so that he could timely seek federal habeas relief while pursuing the second state petition, in the event that the second petition was deemed to be untimely. Under controlling law, an untimely state petition would not statutorily toll the running of the federal limitation period.

On May 20, 2011, the Court appointed counsel for petitioner and denied the motion to stay without prejudice to the pursuit of such relief through counsel following the filing of a counseled amended petition.[3]

On August 25, 2011, petitioner filed a *pro se* motion to supplement the second petition in the state district court. The State responded shortly thereafter with a motion to dismiss the second petition as successive and untimely.

In federal court, petitioner filed a counseled amended petition on January 23, 2012. The Court entered a scheduling order focusing the issues preliminarily upon exhaustion and any request for a stay. Respondents have moved to dismiss for lack of complete exhaustion, and petitioner has moved for a stay in addition to opposing the motion to dismiss.

The online docket records of the state courts reflect that on or about November 27, 2012, subsequent to the completion of the federal briefing, the state district court clerk gave notice of entry of an order by the court granting the State's motion to dismiss. Petitioner has filed what would appear at least from the online record to be a timely appeal, and the Supreme Court of Nevada has issued an order calling up the district court record.[4]

/ / / /

_____

[3]For sundry procedural reasons, the appointment initially was provisional and temporary but since has been made a fully operative non-temporary appointment of federal habeas counsel.

[4]See:

http://www.washoecourts.com/index.cfm?page=casesearch (No. CR00P1295)
http://caseinfo.nvsupremecourt.us/public/caseSearch.do (No. 62273)

***Discussion***

There is no dispute as to the basic proposition that the federal petition, as amended, is a mixed petition containing, to one extent or another, unexhausted claims.  The Court thus turns to the antecedent question of whether the federal action should be stayed while petitioner completes his efforts to exhaust certain unexhausted claims in the ongoing state court proceedings.

In order to obtain a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), in order to return to the state courts to exhaust a claim or claims, a petitioner must demonstrate that there was good cause for the failure to exhaust the claims, that the unexhausted claims include at least one claim that is not plainly meritless, and that petitioner has not engaged in intentionally dilatory litigation tactics.  *See* 544 U.S. at 278.

***Good Cause***

The precise contours of what constitutes "good cause" in this context remain to be fully developed in the jurisprudence.  On the one hand, the Ninth Circuit has held that a requirement that the petitioner show "extraordinary circumstances" to obtain a stay does not comport with the good cause standard in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005).  On the other hand, *Rhines* instructs that a stay should be available only in "limited circumstances," such that the requirement of good cause therefore should not be interpreted in a manner that would render stay orders routine. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008).  Accordingly, a mere impression by a petitioner that a claim was exhausted is not sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay." *Id.* (emphasis in original).[5]

_____

[5]Respondents acknowledge the holding in *Jackson* that extraordinary circumstances are not required but maintain that *Wooten* requires "the petitioner to establish more than ordinary or routine circumstances to justify a stay."  The Court is not persuaded that it should adopt an "extraordinary circumstances" standard in different semantic clothing, *i.e.*, by requiring that a habeas petitioner demonstrate "more than ordinary

(continued...)

-4-

1    While the precise contours of "good cause" under *Rhines* remain to be fully developed,

2  the Supreme Court nonetheless identified one example of good cause in a subsequent

3  decision that would appear to be applicable to the present case.  In *Pace v. Diguglielmo*, 544

4  U.S. 408 2005), the Supreme Court held that a state post-conviction petition that was held to

5  be untimely under state law was not "properly filed" as required for statutory tolling under 28

6  U.S.C. § 2244(d)(2).  In arguing for a different rule, the petitioner in that case challenged the

7  fairness of a rule under which the tolling effect of a state petition would be conclusively

8  established only after the fact.  Significantly for the present case, the Supreme Court

9  responded as follows:

10

11         Finally,  petitioner  challenges  the  fairness  of  our
       interpretation. He claims that a "petitioner trying in good faith to
12     exhaust state remedies may litigate in state court for years only
       to find out at the end that he was never 'properly filed,'" and thus
13     that his federal habeas petition is time barred.  . . . .  *A prisoner
       seeking state postconviction relief might avoid this predicament,*
14     *however, by filing a "protective" petition in federal court and*

15

[5](...continued)
16  circumstances," which is nothing other than "extraordinary circumstances" phrased differently.  The holding
    and lesson of *Wooten* is that the good-cause requirement should not be interpreted in a manner that renders
17  stay orders routine, such as in the situation where a petitioner merely makes a self-serving declaration that he
    "thought" his counsel had exhausted the claim.  *Wooten* does not hold that a petitioner must demonstrate
18  "extraordinary circumstances," which, as respondents are aware, is a term of art drawn from federal habeas
    equitable tolling case law.
19

20         The Court is reluctant to import standards either from equitable tolling or procedural default case law
    that are designed to assess whether a petition or claim should be dismissed with prejudice, *i.e.*, with
21  conclusive finality, and which on occasion may require an evidentiary hearing.  Arguably, such heightened
    standards – directed to the question of whether, in the final analysis, a claim is conclusively procedurally
22  barred – are inappropriate for the preliminary procedural question of whether a stay should be entered while
    petitioner fully exhausts claims in a mixed petition.  It generally is more appropriate for the state courts to
23  have the opportunity in the first instance to consider the application of conclusive procedural bars.  *Cf.*
    *Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011), *cert. denied*, 133 S.Ct. 155 (2012)(noting that, in the
24  circumstances presented, a stay was appropriate because it provided the state court with the first opportunity
    to resolve the claim).  The Court is not sanguine that it should adopt standards that potentially could require
25  an evidentiary hearing to resolve the preliminary procedural issue presented by a request for a stay.

26         If the bar that must be cleared under *Rhines* were as high as that required to establish either
    equitable tolling or cause-and-prejudice, the Supreme Court and the Ninth Circuit know quite well how to
27  invoke such established standards.  To date, neither has done so.  The Ninth Circuit instead has stated to the
    contrary in *Jackson* that an "extraordinary circumstances" standard does not comport with the *Rhines* good-
28  cause standard.

1
2
3
4
5
6

> *asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. See Rhines v. Weber, ante,* 544 U.S., at 278, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005). *A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

7   544 U.S. at 416-17 (italic textual emphasis added).

8        The petitioner in this case has followed the procedure outlined by the Supreme Court
9   in *Pace*.  After state post-conviction counsel did not raise additional claims that petitioner
10  wished to pursue, he filed a second petition in state court seeking to present the claims.
11  However, petitioner had no assurance – and still has none – when he filed the second state
12  petition that the state courts would accept his arguments seeking to establish cause and
13  prejudice to overcome state procedural bars to the otherwise untimely and successive second
14  state petition.  The federal limitation period would expire in the meantime, however, if he
15  waited until the outcome of the proceedings on the second state petition before filing a federal
16  petition. Petitioner thereupon followed exactly the procedure identified in *Pace* as the solution
17  to this procedural dilemma.  He filed a protective federal petition and sought to stay the
18  petition while he sought to exhaust the claims in the second state petition and present his
19  arguments to the state courts seeking to overcome the state procedural bars to the second
20  petition. Under the clear teaching of *Pace*, petitioner's reasonable confusion, *i.e.,* uncertainty,
21  as to whether the second petition ultimately would be held to be timely by the state courts "will
22  ordinarily constitute 'good cause' for him to file in federal court" before exhaustion is
23  completed on the second petition.

24       Indeed, the procedural track followed in this case is essentially the track that state and
25  federal court rulings effectively have been directing Nevada petitioners down in cases where
26  the petitioner wishes to pursue claims that his direct appeal and/or state post-conviction
27  counsel did not pursue.  The state courts (as well as the federal courts) generally do not allow
28  litigants to present their own *pro se* claims or argument when they are represented by

counsel.  This Court further has encountered cases where the state courts also do not grant *pro se* motions for the withdrawal of counsel in such proceedings, and the law is clear that there is no right to self-representation either on direct appeal or in state post-conviction proceedings.  This Court thus repeatedly has rejected the proposition that a petitioner exhausts claims when he attempts to present claims *pro se* on direct appeal and/or on state post-conviction review while represented by counsel but is not permitted to do so by the state courts.[6]  The Court further repeatedly has rejected the proposition that claims that a petitioner thereafter might pursue in a second petition are technically exhausted by virtue of being procedurally defaulted, given that the Nevada state courts apply substantially the same standards as do the federal courts for overcoming a procedural bar.[7]

Such state and federal court rulings effectively drive a similarly-situated petitioner to follow the same procedural course that petitioner followed here, *i.e,* to file a timely protective federal petition and request a stay in order to seek to exhaust his *pro se* claims in a second state petition.  There simply is no other potentially viable procedural track to exhaust the *pro se* claims in this instance.  The state courts will not allow a petitioner to pursue claims *pro se* while represented, and this Court repeatedly has rejected the argument that the *pro se* claims are exhausted because there is no available state procedure to present the claims.

The Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), further reinforces a conclusion that good cause should be found in this procedural posture.  In *Martinez*, the Court held that inadequate assistance of counsel in initial-review collateral proceedings may establish cause for a petitioner's failure to pursue a claim of ineffective assistance of trial counsel in such proceedings.  If the Nevada state supreme court ultimately

---

[6]*See,e.g., Elliott v. Benedetti*, No. 3:09-cv-00265-LRH-RAM, at 5 & 11 (D. Nev., March 31, 2011).

[7]*See,e.g., Johnson v. Neven*, No. 2:08-cv-01352-JCM-RJJ, at 13-15 (D.Nev., July 26, 2012)(declining to find exhaustion on the basis of procedural default absent an unequivocal stipulation, *inter alia*, that petitioner could not overcome the procedural bars under the substantially similar standards for overcoming the bars in state court).  Given the similar standards, substantially any argument that a petitioner might present in federal court to overcome a procedural default can be presented to the state courts in the first instance.  As the Court discussed in note 5, *supra*, this procedure gives the state courts the first opportunity to consider the application of their procedural bars and, if the bars are overcome, the merits of the claims.

1  declines across the board to recognize the rule in *Martinez* as a potential basis for overcoming

2  a state procedural bar, then this Court will factor such a holding into its application of

3  exhaustion and procedural default rules.  In the meantime, it is difficult to conceive how a

4  petitioner effectively would present a *Martinez*-based argument in the state courts to

5  overcome a failure by state post-conviction counsel to present a claim in the state district

6  court other than through the filing of a *pro se* second state petition.[8]

7          Therefore, absent unusual circumstances not presented here, and given the discussion

8  in *Pace*, the Court is inclined to find that a petitioner in this procedural posture has

9  demonstrated good cause under *Rhines* when he promptly seeks to pursue a second state

10 petition to exhaust *pro se* claims that his state post-conviction counsel did not pursue.  The

11 petitioner in this case diligently and promptly sought to pursue a *pro se* second state petition

12 to present claims his state post-conviction counsel did not pursue while also invoking the

13 protective-petition procedure that the Supreme Court approved in *Pace* for situations where

14 the timeliness of a state petition is at issue.  The Court accordingly finds that petitioner has

15 demonstrated good cause under *Rhines*.[9]

16 _____

17      [8]Particularly given *Martinez*, the Court is not persuaded by respondents' suggestion that a petitioner
   must present express requests to his state post-conviction counsel to pursue all of the specific claims raised
18 in the *pro se* second state petition in order to demonstrate good cause.  A petitioner seeking to establish
   ineffective assistance of trial or appellate counsel is not required to establish that he requested trial or direct
19 appeal counsel to pursue a claim or issue, just that counsel was ineffective for failing to do so.  A different
   situation perhaps would have been presented in this case if petitioner instead had waited until after a motion
20 to dismiss for lack of exhaustion had been filed in order to seek to pursue a second petition.  Here, however,
   petitioner promptly pursued the only state procedural vehicle potentially open to a petitioner seeking to pursue
21 claims *pro se* that his state post-conviction counsel either declined – or failed – to pursue.

22      Further, the fact that appellate and post-conviction counsel are not required to pursue every non-
   frivolous claim reinforces rather than undercuts a finding of good cause in this context.  Again, if the state
23 courts will not allow petitioners to present *pro se* papers in a represented case (as is the practice in both state
   and federal court) and if the federal court will not recognize such filings as exhausting claims, a petitioner
24 must have some procedural vehicle to fairly present the *pro se* claims to the state courts.  Those courts
   perhaps ultimately may find claims to be barred.  However, they will have been given the first opportunity to
25 consider whether state procedural bars should be overcome on the premise that the *pro se* petitioner has
   meritorious claims that state post-conviction counsel failed to pursue through inadequate assistance.
26

27      [9]Petitioner seeks to establish good cause based upon alleged ineffective assistance of counsel on
   direct appeal and in the state post-conviction proceedings.  Particularly given the discussion in *Pace*, the
28
                                                                                              (continued...)

                                        -8-

1    ***Not Plainly Meritless Claim***

2          When the *Rhines* Court discussed the issue of whether a petitioner has presented a

3    claim that is not plainly meritless, the Court made a comparison cite to 28 U.S.C. § 2254(b)(2)

4    concerning this inquiry.  544 U.S. at 277.  The Ninth Circuit has held that a district court may

5    reject an unexhausted claim on the merits pursuant to  § 2254(b)(2) "only when it is perfectly

6    clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406

7    F.3d 614, 623-24 (9th Cir. 2005).

8          Respondents focus their discussion of this *Rhines* factor on Ground 1(J), on the

9    premise that petitioner, at best, can establish good cause for a failure to exhaust only as to

10   this one claim.[10]

11         In Ground 1(J), petitioner alleges that he was denied effective assistance of counsel

12   in violation of the Sixth and Fourteenth Amendments when trial counsel failed to properly

13   object to the testimony of Reno Police Officer Knight and failed to impeach his testimony.

14         At approximately 1:30 p.m. on June 24, 2000, a masked gunman entered the Bains

15   Mini-Market in Reno, Nevada and shot and killed the owner, Kuldip Bains, with a 10 mm Colt

16   semiautomatic pistol.  The prosecution sought to establish that petitioner was the gunman

17   _____

18         [9](...continued)

19   Court has no need to make the equivalent of either a procedural default holding or a holding on the merits to
     resolve the preliminary procedural question of whether to enter a stay.  As discussed in note 5, *supra*, it is not

20   appropriate to apply an analysis on this preliminary procedural question that potentially could require an
     evidentiary hearing to resolve.  Petitioner can make his arguments regarding alleged ineffective assistance of

21   counsel to the state courts in the first instance in seeking to overcome state procedural bars.

22         The Court additionally notes that the only further steps that petitioner conceivably might have taken
     would have been to seek to present *pro se* filings during the represented state proceedings and/or possibly to

23   seek to remove state post-conviction counsel.  As noted in the text, efforts to present *pro se* filings in the
     represented proceedings likely would have been rejected, which also has occurred not infrequently with

24   regard to efforts to remove post-conviction counsel.  The Court further is not persuaded in any event that a
     lay petitioner must seek to proceed wholly without counsel on the first state petition in order to establish good

25   cause in this procedural context.  Here, petitioner sought to present claims *pro se* as promptly as he could
     following the conclusion of the represented proceedings in the state district court.

26

27         [10]The Court is not persuaded by respondents' argument that petitioner cannot establish good cause
     as to other unexhausted claims, for the reasons discussed, *supra*, and in particular in note 8.  However, to

28   narrow the focus on any later review of the grant of a stay herein, the Court follows the track of respondents'
     argument and addresses application of the second *Rhines* factor to Ground 1(J).

through a number of items of circumstantial evidence.  There was a surveillance video of the shooting by the masked gunman, but there was no direct eyewitness testimony by a witness who observed the shooting and identified Brown as the masked gunman.  Surveillance video also showed Brown in the store, which was only two blocks from his home, at 11:30 a.m.

Witnesses Lisa Polon, Matthew Jiminez, and Marco Bimbo testified that a car "peeled out" or "screeched" while leaving the store.[11]  Scuff marks apparently were found near the payphone during the crime scene investigation.  Outside the presence of the jury, the prosecutor proffered that Officer Rob Knight would testify that in is opinion the scuff marks were consistent with Brown's vehicle, a 1993 Subaru Legacy.  The prosecutor posited that Officer Knight's testimony "would tend to link the defendant's car and corroborate the testimony of Bimbo, Jimenez, and Boland [sic] and their description of the defendant when they say he was there and he was driving somewhat erratically at one p.m. that day."[12]

---

[11]Polon testified that, at some point, she heard a "screech" from a tannish car that was "pulling out kind of heavily and speedy" and "started kind of swerving when it was going down the street."  She later saw the car coming around again, and then she saw the car parked at the mini-mart about five minutes later.  She identified Brown's car from photographs as the car that she heard screeching.  The driver was a white male wearing a white t-shirt and a black baseball cap.  Polon did not see the driver's face and did not make any identification of Brown as the driver.  #17, Ex. 36, at 222-40.

Jiminez testified that he left a nearby park with a group "around 1:00 o'clock."  On their way back, he saw "a guy" at the pay phone at the mini-mart.  The guy "jumped in his car and peeled out and sped off . . . ."  A short time later, he saw the same car speed by them and swerve to miss some people on a corner.  The car then made a U-turn and parked in front of a house.  Jiminez described the car as "goldish," and he "thought it was a Honda Accord."  Jiminez initially was equivocal on direct examination when the prosecutor sought to have him identify Brown's car from photographs as the car that he saw.  However, after having been asked several times and shown several photographs, Jiminez ultimately stated that he was "pretty sure" that the pictured car was the car that he had seen and, finally, that "[y]eah, it's the same car and everything."  Jiminez made no identification of Brown as the individual that he had seen.  #17, Ex. 36, at 240-56.

Bimbo testified that he was in the parking lot of the store "[a]round 12:30 until 1:00 o'clock."  His daughter was exiting their vehicle when a gold car pulled into the lot and slammed on its brakes next to the payphone.  The driver talked on the phone and then got back in the car and sped away, "peeling out" and "spinning out" as he left and drove away.  Bimbo identified Brown's car from photographs as the car that he had seen that day.  On direct, Bimbo made no identification of Brown as the individual that he had seen.  He further acknowledged on cross-examination that he had told the police that the individual that they had in custody was not the person that he had seen on the payphone.  However, he nonetheless identified Brown as the individual on cross-examination at trial.  #17, Ex. 37, at 284-317.

[12]#17, Ex. 38, at 710-11.

-10-

Defense counsel objected to the proferred testimony on the following basis:

> Your Honor, the defendant's position is that the evidence is confusing and it's a waste of time for the jury and it's not relevant.
>
> The fact that Mr. Brown was at that location and that the tire track is consistent with this at 11:30 a.m. has nothing to do with a 1:38 murder. So we would oppose the evidence and don't believe it's relevant.

#17, Ex. 38, at 711-12.

The trial court overruled the objection, and Officer Knight testified. Knight was not tendered or accepted as an expert during his testimony. However, he presented detailed opinion testimony that the scuff marks at the scene were acceleration scuff marks and were consistent with the tires on Brown's vehicle. He further opined that the marks were made by a vehicle that had the same axle width and that similarly was a front-wheel drive vehicle.[13] Knight also testified that Brown's vehicle had a manual transmission, which made it easier to leave acceleration scuff marks.[14] On cross-examination, defense counsel secured an acknowledgment from Officer Knight that the tire in question was a common tire that could be placed on any vehicle that required a 14-inch radius tire.[15] However, counsel did not challenge Knight's assertion that Brown's vehicle had a manual transmission, and her examination instead accepted that alleged fact as a given.[16]

A photograph represented to be of the interior of Brown's Subaru, however, shows a vehicle with a selector for an automatic transmission rather than a stick shift for a manual transmission.[17]

////

---

[13]#17, Ex. 39, at 721-29.

[14]Id., at 729.

[15]Id., at 730-34.

[16]Id.,, at 731.

[17]#19, Ex. 100.

-11-

1        In Ground 1(J), petitioner alleges in particular that Officer Knight was permitted to

2    testify as an expert although he was not qualified as an expert, that permitting police officers

3    to testify as experts does not comply with due process requirements of reliability and

4    relevance, and that he was prejudiced by the admission of the testimony.  He alleges that trial

5    counsel was ineffective for failing to properly object to the testimony and further for failing to

6    impeach the officer's testimony while he was on the stand with the evidence that Brown's car

7    had an automatic rather than a manual transmission.

8        In contending that Ground 1(J) is plainly meritless, respondents do not address the

9    application of the *Cassett* standard requiring that it be perfectly clear that the petitioner does

10   not raise even a colorable federal claim.

11       Respondents posit that petitioner offers no explanation as to why trial counsel's

12   objection was "constitutionally defective."  However, petitioner clearly is alleging that trial

13   counsel's generic relevancy objection did not adequately challenge the witness' qualification

14   to give the opinion testimony in question, which petitioner maintains constituted improper and

15   unreliable expert opinion testimony by the officer.

16       Respondents further note that defense counsel attacked the reliability of Officer

17   Knight's testimony in her closing on the factual basis that Brown's Subaru had an automatic

18   rather than a manual transmission.[18]  However, the matter of whether such an after-the-fact

19   challenge overcame the failure to challenge the witness when he was on the stand -- while

20   then accepting his erroneous testimony as fact -- does not render it perfectly clear that

21   Ground 1(J) does not raise even a colorable claim in any respect.

22       Respondents additionally maintain that petitioner cannot demonstrate prejudice on the

23   claim.  Respondents contend:

25       . . . . [E]ven if Officer Knight had not been permitted to testify, there were *three additional witnesses* who independently

26   verified Brown's presence in the vicinity of the store shortly before the murder.  *Id*. at 1289-90 (prosecutor noting that "Knight's

28   [18]#17, Ex. 45, at 1320-21.

-12-

1

2

> testimony corroborates [trial witnesses] Polon, Jimenez [sic],
> [and] Bimbo regarding the defendant being at the store being the
> person talking on the telephone.").

3   #31, at 7 (emphasis in original).  The flaw in this argument, however, is that the prosecutor

4   overstated the testimony of the three witnesses in his closing argument.  Neither Polon nor

5   Jiminez made any identification of Brown, and neither testified as to him being at the store

6   talking on the telephone.  Bimbo testified on cross-examination that Brown was the individual

7   talking on the payphone, thirty minutes or more before the shooting, but Bimbo also had told

8   the police earlier that the individual that they had in custody was not the person that he had

9   seen on the telephone.[19]  The Court must decide cases based on the actual evidence, not on

10  what the lawyers say about the evidence.

11          To be sure, there was considerable circumstantial evidence implicating Brown.

12  However, the more that the Court must delve into the actual trial evidence to weigh the

13  competing inferences that could be drawn from particular evidence in context, the more

14  difficult it becomes to conclude that "it is perfectly clear that the applicant does not raise even

15  a colorable federal claim."

16          The Court holds that Ground 1(J) is not plainly meritless under that standard.

17          The Court accordingly need not reach any question as to the relative merit of the

18  remaining unexhausted claims.  The pertinent inquiry is whether the federal district court

19  should enter a stay, and the Court need find the presence of only one claim that is not plainly

20  meritless for that limited purpose.  The Court need not engage in an inquiry analogous to

21  certifying claims for a certificate of appealability wherein the Court certifies what claims

22  petitioner can and cannot pursue in the pending state proceedings.  The Court's inquiry ends

23  once it determines that the requirements for a stay have been satisfied.  What claims

24  petitioner seeks to pursue in state court during the stay and thereafter in federal court is a

25  matter to be determined by petitioner, subject to any then-applicable defenses once the

26  federal case is reopened.

27  _____

28          [19]See note 11, *supra*.

***No Intentionally Dilatory Tactics***

Finally, nothing in the record before the Court reflects that petitioner has engaged in intentionally dilatory tactics.  While it perhaps is not utterly inconceivable that a noncapital habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor, as a practical matter, largely is restricted to capital cases.[20]

Following consideration of the *Rhines* factors, petitioner's request for a stay accordingly will be granted.

The Court expresses no opinion by this order as to whether the circumstances presented satisfy the cause-and-prejudice standard with respect to any claim of procedural default.  The holding herein should not be read as an express or implied holding on this issue or any other issue.  The Court holds here only that the criteria for a stay under *Rhines* have been satisfied, and its holding in this order is expressly limited to that specific context.

IT THEREFORE IS ORDERED that petitioner's motion (#29) to stay is GRANTED and that this action is STAYED pending exhaustion of petitioner's unexhausted claims.  Petitioner may move to reopen the matter following exhaustion of the claims, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

IT FURTHER IS ORDERED that, taking into account that state post-conviction proceedings already are pending, the grant of a stay is conditioned upon petitioner returning to federal court with a motion to reopen within forty-five (45) days of issuance of the remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[21]

/ / / /

---

[20]*Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9 (2007)(Ginsburg, J., dissenting)("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . . .  Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011)(petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

[21]If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings.  *Cf. Lawrence v. Florida*, 549 U.S. 327, 335 (2007).

-14-

1    IT FURTHER IS ORDERED that, with any motion to reopen filed following completion

2 of all state court proceedings pursued, petitioner: **(a)** shall attach an indexed chronological

3 set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s)

4 on the docketing system) containing the state court record materials relevant to the issues

5 herein that cover the period between the state court record exhibits on file in this matter and

6 the motion to reopen; **(b)** if petitioner then intends to further amend the petition, shall file a

7 motion for leave to amend along with the proposed verified amended petition or a motion for

8 extension of time to move for leave;[22] and **(c)** shall state in the motion to reopen whether

9 petitioner contends that the proceedings on the second state petition necessitate further

10 briefing as to the exhaustion of Grounds 3(A), 3(C), and 7(A)-(D). Respondents shall have

11 thirty (30) days to file a response to the motion or motions filed.  The reopened matter will

12 proceed under the current docket number.

13    IT FURTHER IS ORDERED that respondents' motion (#23) to dismiss is DENIED

14 without prejudice to the reassertion of any and all applicable procedural defenses following

15 upon and pursuant to a scheduling order issued after the matter is reopened.[23]

16    IT FURTHER IS ORDERED that petitioner's motion (#32) for an extension of time is

17 GRANTED *nunc pro tunc*.

18    IT FURTHER IS ORDERED that the Clerk of Court shall ADMINISTRATIVELY CLOSE

19 this action until such time as the Court grants a motion to reopen the matter.

20    DATED: January 25, 2013

23    _____
     KENT J. DAWSON
     United States District Judge

[22]No claims in the current pleadings are dismissed by this order.

[23]If the second state petition does not affect the exhaustion analysis as to Grounds 3(A), 3(C), and 7(A)-(D), the parties will be able to adopt by reference their prior briefing on the issue of whether these claims are exhausted. Also, the Court may decide the exhaustion issues as to these grounds prior to directing a further response.

-15-