# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BEAU BROWN,

     Petitioner,                         2:11-cv-00790-KJD-NJK

vs.

                                     **ORDER**

DWIGHT NEVEN, *et al.*,

     Respondents.

_____/

Introduction

      This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Beau Brown, a Nevada prisoner. The respondents have filed a motion to dismiss. The court will grant respondents' motion in part and deny it in part. The court will dismiss certain of Brown's claims. With regard to other claims, those unexhausted in state court and not dismissed on other grounds, the court will direct Brown to make an election.

Background

      In its order affirming Brown's judgment of conviction, the Nevada Supreme Court described the background of the case as follows:

> On June 24, 2000, police responded to a call of a robbery in progress at Bains Mini Market in Reno, Nevada. According to witnesses, Brown, together with two customers of the mini-mart, was performing CPR on Kuldip Bains, the owner of the market. Bains had been shot in the face. Brown was observed repeatedly stating, "You can't die, he can't die." When police arrived they asked Brown for

identification.  Brown, accompanied by an officer, went to his car to retrieve identification.

Officer Rulla noticed a handgun in the back seat of Brown's car.  He picked up the gun and questioned Brown as to its owner.  A struggle ensued, and Rulla tossed the gun back into the car.  Brown broke free, and Rulla shouted, "Gun!"  Officers tackled Brown to the ground.  Brown's head hit the pavement, causing seizures and a momentary loss of consciousness.  Emergency medical personnel took Brown to Washoe Medical Center for his injuries.  Video surveillance from Bains Market captured most of this incident.

At the hospital, several officers had custody and control of the clothes emergency personnel cut from Brown's body.  At trial, the State conceded several officers, some of whom did not sign the evidence logs as required, had handled the clothes.  Upon release from the hospital, police took Brown to the Reno Police Department on charges of obstruction and resisting a police officer.

Police advised Brown of his *Miranda* rights.  Brown, dressed only in a hospital gown, agreed to discuss his day, although he allegedly suffered amnesia from the altercation with police.  Brown's blood alcohol level was .17, a fact known to the interviewing detective.

According to Brown, he went to Bains Market and purchased various items, including vodka.  After making the purchases, Brown drove his car to pick up a friend named Travis.  The car contained, among other things, a ten-millimeter Colt handgun and a .22 caliber handgun.  Both handguns belonged to Brown's father.

Brown stated that he and Travis attempted to buy marijuana from a Carlos Hernandez.  They drank vodka while waiting for Hernandez at a location near Bains Market.  Brown testified that Hernandez mistrusted Travis, so Travis drove away in Brown's car.  Fifteen minutes later, Travis allegedly returned and told Brown he shot Bains, the owner of Bains Market.  Brown then drove to the market to assist Bains.

Detective Wes Myers obtained a telephonic warrant to search Brown's car and home.  Police towed the car from the convenience store to the Washoe County Crime Lab.  The search revealed a pair of Adidas jogging pants with a stripe on the side, white T-shirt, black shirt, dark colored backpack, Colt ten-millimeter handgun with a fully loaded magazine, gun holster, dark blue baseball cap, wallet, and two bottles of vodka.

The car remained in impound for several months.  Prior to the release of the car, officers, in the presence of all counsel, searched the car again.  This time, police recovered a box cutter, prescription drug bottles, a *Guns & Ammo* magazine, and film canisters with an aroma of marijuana.  Brown filed a pre-trial motion to suppress the evidence obtained in the second search for lack of a warrant.

The district court denied Brown's motion, finding the search was done with consent of Brown, however, the district court ruled that some of the evidence was more prejudicial than probative.  The district court excluded the box cutter in light of the events of September 11.  Subsequent to the suppression ruling, police found a ski mask with eyeholes cut in it near the crime scene.  The mask contained the DNA of Brown and an unidentified individual.  Based upon the possibility that the box cutter

1    could have been used to cut the eyeholes in the mask, the district court revised its
     earlier ruling and indicated the box cutter could be admitted.

2
          After a seven-day trial, a jury convicted Brown of murder in the first degree
3    with the use of a firearm, attempted robbery with a deadly weapon, and burglary with
     a deadly weapon.

4

5    Order of Affirmance, Exhibit 62.[1]

6         The judgment of conviction was entered on July 30, 2002.  *See* Judgment, Exhibit 51.  Brown

7    was sentenced to:  two consecutive sentences of life in prison without the possibility of parole for the

8    murder with the use of a firearm; two consecutive sentences of 24 to 60 months in prison for the

9    attempted robbery with use of a deadly weapon, to be served concurrently with the life sentences;

10   and a sentence of 24 to 120 months in prison for the burglary, to be served concurrently with the

11   other sentences.  *See id*.

12        Brown appealed, and the Nevada Supreme Court affirmed the judgment of conviction on

13   January 8, 2004.  *See* Order of Affirmance, Exhibit 62.

14        On January 26, 2005, Brown filed a post-conviction petition for writ of habeas corpus in the

15   state district court.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 64.  The state

16   district court held an evidentiary hearing (*see* Exhibits 69-71), and entertained supplemental briefing

17   (*see* Exhibits 72-74).  The state district court denied the petition, in a written order, on May 6, 2010.

18   *See* Findings of Fact, Conclusions of Law and Judgment, Exhibit 76.  Brown appealed, and the

19   Nevada Supreme Court affirmed on May 9, 2011.  *See* Order of Affirmance, Exhibit 85.

20        While the appeal from the denial of his first state habeas corpus petition was still pending, on

21   October 12, 2010, Brown filed a second state petition for writ of habeas corpus.  *See* Petition for

22   Writ of Habeas Corpus (Post-Conviction), Exhibit 80.  The state district court dismissed that petition

23   on November 19, 2012.  *See* Findings of Fact, Conclusions of Law and Judgment, Exhibit 110.

24

25

26
          [1]  The exhibits referred to in this order were filed by Brown, and are located in the record at ECF
     Nos. 16, 17, 18, 19, 28 and 40.

1  Brown appealed, and the Nevada Supreme Court affirmed on September 16, 2014.  *See* Order of

2  Affirmance, Exhibit 120.

3      This court received Brown's federal habeas petition, initiating this action *pro se*, on

4  May 17, 2011 (ECF No. 1).   The court granted Brown's motion for appointment of counsel, and

5  appointed counsel to represent him.  *See* Order entered May 20, 2011 (ECF No. 7); Notice of

6  Representation of Petitioner (ECF No. 10)  With counsel, Brown filed a first amended petition for

7  writ of habeas corpus (ECF No. 15) on January 23, 2012.  Brown's first amended petition asserts the

8  following claims:

9   1A.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for antagonizing the jury during closing arguments" in the penalty
10      phase of the trial.  First Amended Petition (ECF No. 15), p. 7.

11  1B.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to obtain the original surveillance tape and provide it to her
12      expert witness."  *Id*. at 8.

13  1C.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to object to the defective verdict form."  *Id*. at 9.
14

15  1D.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to properly object to the attempted robbery instructions."
16      *Id*. at 10.

17  1E.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to object to the testimony from the victim's family
18      regarding preferred punishment."  *Id*. at 11.

19  1F.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to present mitigation evidence at the penalty hearing."  *Id*.
20      at 12.

21  1G.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to request a complete motive instruction."  *Id*. at 13.

22  1H.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to investigate whether Mr. Bimbo's testimony was the
23      product of a conspiracy between himself and the victim's son and for failing
       to impeach Mr. Bimbo with the information."  *Id*. at 13.
24

25  1I.   Trial counsel was ineffective, in violation of Brown's federal constitutional
       rights, "for failing to challenge the flight instruction."  *Id*. at 14.

26

4

1J.     Trial counsel was ineffective, in violation of Brown's federal constitutional rights, "in the presentation of her objection to the testimony of Officer Knight." *Id*. at 15.

1K.     Trial counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to object to Sarvpreet Bains' penalty phase testimony." *Id*. at 16.

1L.     Trial counsel was ineffective, in violation of Brown's federal constitutional rights, "in her presentation of the motion to suppress Brown's statements." *Id*. at 17.

1M.     Trial counsel was ineffective, in violation of Brown's federal constitutional rights, as a result of the cumulative effect of counsel's errors. *Id*. at 17.

2A.     Appellate counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to challenge the defective verdict form on appeal." *Id*. at 18.

2B.     Appellate counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to properly challenge the attempted robbery instruction on appeal." *Id*. at 18.

2C.     Appellate counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to challenge on appeal the testimony from the victim's family regarding preferred punishment." *Id*. at 19.

2D.     Appellate counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to challenge the motive instruction or lack thereof." *Id*. at 20.

2E.     Appellate counsel was ineffective, in violation of Brown's federal constitutional rights, "for failing to challenge the flight instruction." *Id*. at 21.

3A.     Brown's federal constitutional rights were violated because the trial court "erred in refusing Brown's proffered instructions on his theory of defense." *Id*. at 22.

3B.     The trial court gave a jury instruction on reasonable doubt that violated Brown's federal constitutional right to due process of law. *Id*. at 22.

3C.     The trial court gave a jury instruction on attempted robbery that violated Brown's federal constitutional right to due process of law. *Id*. at 23.

3D.     Brown's federal constitutional rights were violated because the trial court "erred in refusing to give an instruction on the limitations of DNA evidence." *Id*. at 24.

3E.     Brown's federal constitutional rights were violated because the trial court "erred in giving the flight instruction." *Id*. at 24.

3F.     Brown's federal constitutional rights were violated because the trial court "erred in permitting Officer Knight to testify." *Id*. at 25.

4.      Brown's federal constitutional rights were violated because "the State knowingly introduced evidence against Brown in the form of an altered surveillance tape, and where trial counsel was not advised of the alterations made to the tape." *Id*. at 26.

5.      Brown's federal constitutional rights were violated because of prosecutorial misconduct. *Id*. at 28.

6.      Brown's sentence is disproportionate to the crime, in violation of the Eighth Amendment to the United States Constitution. *Id*. at 29.

7A.     "The search warrant issued on June 24, 2000 failed to comply with Brown's Fourth and Fourteenth Amendment rights to be free from unlawful searches and seizures." *Id*. at 31.

7B.     "The August 8, 2000 search of Brown's car was unlawful and the evidence should have been suppressed." *Id*. at 32.

7C.     Brown's federal constitutional rights were violated as a result of "[t]he trial court's ruling to admit evidence of Brown's possession of a box cutter and a photograph in which he is holding a gun." *Id*. at 32.

7D.     Brown's federal constitutional rights were violated because "[a]ny evidence obained at the Washoe County Medical Center should have been suppressed." *Id*. at 34.

7E.     "Brown's statements were obtained in violation of his right to remain silent and his right to an attorney, and they should have been suppressed." *Id.* at 34.

8.      Brown's federal constitutional rights were violated because of the State's failure to disclose evidence favorable to Brown. *Id*. at 36.

9.      The design of the courtroom violated Brown's federal constitutional rights to confront the witnesses against him and to due process of law. *Id*. at 37.

10.     Brown's federal constitutional rights were violated because of cumulative error. *Id*. at 38.

The action was then stayed from January 25, 2013, to February 3, 2015, pending completion of Brown's second state habeas action. *See* Order entered January 25, 2013 (ECF No. 35); Order entered February 3, 2015 (ECF No. 41).

On March 18, 2015, respondents filed a motion to dismiss, arguing that Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F, and 4 are barred by the procedural default doctrine, that Claims 3A, 3C, 7A, 7B, 7C

and 7D are unexhausted, and that Claims 7A and 7B are not cognizable in this federal habeas corpus action.  *See* Motion to Dismiss (ECF No. 42).  Brown filed an opposition to the motion to dismiss on July 6, 2015 (ECF No. 45), and respondents filed a reply on August 20, 2015 (ECF No. 46).

Discussion

Procedural Default

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").  Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule.  *Murray*, 477 U.S. at 488.  For cause to exist, the external impediment must have prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In their motion to dismiss, respondents assert that Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F and 4 are procedurally defaulted.  Motion to Dismiss (ECF No. 42), pp. 4-5.

1    Each of Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F and 4 were raised by Brown before the Nevada

2    Supreme Court only on the appeal in his second state habeas action; none of those claims was raised

3    on his direct appeal or on the appeal in his first state habeas action. *See* Appellant's Opening Brief,

4    Exhibit 59; Appellant's Reply Brief, Exhibit 61; Appellant's Opening Brief, Exhibit 79; Appellant's

5    Reply Brief, Exhibit 84; Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 80; Case

6    Appeal Statement, Exhibit 115. The Nevada Supreme Court ruled that Brown's second state habeas

7    action was procedurally barred, by the statute of limitations (NRS 34.726(1)), as a successive

8    petition (NRS 34.810(1)(b)(2) and (2)), and by the laches doctrine (NRS 34.800(2)). *See* Order of

9    Affirmance, Exhibit 120. Brown does not contend that the application of those state procedural rules

10   was not independent of federal law, or that the state procedural rules were inadequate to support

11   application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF No. 45),

12   pp. 7-19. Nor does Brown claim that he can overcome the procedural default by a showing of actual

13   innocence. *See id*.

14        Brown argues, rather, that, under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), he can show

15   cause and prejudice to overcome his procedural default of each of Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F

16   and 4. In *Martinez*, the Supreme Court held that a petitioner may establish cause for the procedural

17   default of an ineffective assistance of counsel claim by showing that: (1) the claim of "ineffective

18   assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no

19   counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state

20   collateral review proceeding was the "initial" review proceeding with respect to the ineffective

21   assistance of trial counsel claim; and (4) state law requires that an "ineffective assistance of trial

22   counsel [claim] ... be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S.Ct.

23   1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct. at 1318). With regard to the first prong of the four

24   part analysis described in *Trevino*, the petitioner must "demonstrate that the underlying ineffective

25   assistance of trial counsel claim is a substantial one, which is to say that ... the claim has some

26   merit." *Martinez*, 132 S.Ct. at 1318-19. In *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir.2013),

1 the Ninth Circuit Court of Appeals extended *Martinez*, holding that it also applies to claims of

2 ineffective assistance of direct appeal counsel.

3   In this case there is no controversy with respect to the third and fourth prongs of the analysis

4 described in *Trevino*.  Therefore, the procedural default issues in this case turn on the questions

5 whether Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F and 4 are substantial claims, with some merit, and

6 whether Brown's counsel in his first state habeas action was ineffective for failing to raise those

7 claims.

8       <u>Claims 1I, 2E and 3E</u>

9   In Claim 3E, Brown claims that his federal constitutional rights were violated because the

10 trial court "erred in giving the flight instruction."  First Amended Petition, p. 24.  In Claim 1I, Brown

11 claims that his trial counsel was ineffective "for failing to challenge the flight instruction."  *Id*. at 14.

12 And, in Claim 2E, Brown claims that his appellate counsel was ineffective "for failing to challenge

13 the flight instruction."  *Id*. at 21.

14   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

15 prong test for analysis of claims of ineffective assistance of counsel:  the petitioner must demonstrate

16 (1) that the defense attorney's representation "fell below an objective standard of reasonableness,"

17 and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a

18 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

19 would have been different."  *Strickland*, 466 U.S. at 688, 694.  A court considering a claim of

20 ineffective assistance of counsel must apply a "strong presumption" that counsel's representation

21 was within the "wide range" of reasonable professional assistance.  *Id*. at 689.  The petitioner's

22 burden is to show "that counsel made errors so serious that counsel was not functioning as the

23 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  And, to establish

24 prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

25 some conceivable effect on the outcome of the proceeding."  *Id* at 693.  Rather, the errors must be

26 "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  In

1    analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider

2    either the question of deficient performance or the question of prejudice; if the petitioner fails to

3    satisfy one prong, the court need not consider the other.  *Id.* at 697.

4           The court finds that these three claims -- Claims 1I, 2E and 3E -- are wholly without merit

5    and insubstantial.  The Nevada Supreme Court stated the following in its decision on Brown's direct

6    appeal, regarding Brown's actions at the scene shortly after the murder of Bains:

7                Officer Rulla noticed a handgun in the back seat of Brown's car.  He picked
             up the gun and questioned Brown as to its owner.  A struggle ensued, and Rulla
8            tossed the gun back into the car.  Brown broke free, and Rulla shouted, "Gun!"
             Officers tackled Brown to the ground.  Brown's head hit the pavement, causing
9            seizures and a momentary loss of consciousness.  Emergency medical personnel took
             Brown to Washoe Medical Center for his injuries.  Video surveillance from Bains
10           Market captured most of this incident.

11   Order of Affirmance, Exhibit 62, pp. 1-2.  Brown alleges that the State "presented no evidence of

12   flight" (*see* First Amended Petition, pp. 15, 21, 25), but that allegation is plainly belied by the

13   evidence that Brown attempted to flee, when a police officer discovered the gun and asked Brown

14   about it, and he had to be physically stopped and apprehended.  *See*, *e.g.*, Testimony of Perry

15   Anderson, Transcript of Trial, April 9, 2002, Exhibit 37, p. 419; Testimony of Julie Hawkins,

16   Transcript of Trial, April 9, 2002, Exhibit 37, p. 438; Testimony of William Rulla, Jr., Transcript of

17   Trial, April 9, 2002, Exhibit 37, pp. 464-70; Testimony of William Rulla, Jr., Transcript of Trial,

18   April 10, 2002, Exhibit 38, pp. 503-04; Testimony of Dave Zeissner, Transcript of Trial, April 10,

19   2002, Exhibit 38, pp. 557-561; Testimony of Christopher Alexander, Transcript of Trial, April 12,

20   2002, Exhibit 40, pp. 992-92.  Because there was ample evidence justifying the giving of the flight

21   instruction, Brown's trial and appellate counsel were not ineffective for failing to challenge that

22   instruction.

23          Brown's post-conviction counsel was not ineffective for failing to raise, in Brown's first

24   habeas action, the claims he asserts in this case as Claims 1I, 2E and 3E.  Brown does not show

25   cause and prejudice to overcome his procedural default of Claims 1I, 2E and 3E.

26

1      <u>Claims 1J and 3F</u>

2      In Claim 3F, Brown claims that his federal constitutional rights were violated because the

3 trial court "erred in permitting Officer Knight to testify."  First Amended Petition, p. 25.  In Claim

4 1J, Brown claims that his trial counsel was ineffective "in the presentation of her objection to the

5 testimony of Officer Knight."  *Id*. at 15.

6      Reno Police Officer Rob Knight testified regarding car tire acceleration scuff marks,

7 evidently left when a car "peeled out" from a parking lot at the location of the murder.  *See*

8 Testimony of Rob Knight, Transcript of Trial, April 11, 2002, Exhibit 39, pp. 721-34.  Knight

9 testified that the acceleration scuff marks were consistent with the tires on Brown's car.  *See id*.

10 at 729.

11      With respect to his claim that the opinion testimony of Knight violated his federal

12 constitutional right to due process of law, citing no federal authority, Brown argues that admission of

13 Knight's testimony violated his constitutional right to due process of law because the testimony "was

14 not reliable and ... was more prejudicial than probative."  *See* First Amended Petition, pp. 25-26;

15 Opposition to Motion to Dismiss, p. 18.  The admission of evidence is not subject to federal habeas

16 review unless a specific constitutional guarantee is violated or the error is of such magnitude that the

17 result is a denial of the fundamentally fair trial guaranteed by the due process clause of the federal

18 constitution.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir.1999).  Failure to comply with

19 state rules of evidence is not a basis for federal habeas relief on due process grounds.  *See Henry*,

20 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991).  The due process

21 inquiry on federal habeas review is whether the admission of evidence was arbitrary or so prejudicial

22 that it rendered the trial fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995).

23 Brown makes no allegations, regarding the admission of Knight's testimony, that would approach

24 this standard.  This aspect of Brown's Claim 3F is plainly insubstantial.

25      With regard to Brown's trial counsel's handling of Knight's testimony -- the claim, in

26 Claim 1J, that trial counsel was ineffective with respect to her presentation of her objection to that

testimony -- the court finds that claim, as well, to be insubstantial.  Counsel objected to Knight's testimony on the ground that it was confusing, a waste of time, and not relevant.  *See* Transcript of Trial, April 10, 2002, Exhibit 38, pp. 710-12.  The objection was overruled.  *Id*. at 712.  Brown makes no showing that any further or different objection would have been successful.

In Claim 1J, Brown also claims that his trial counsel was ineffective with respect to her cross-examination of Knight.  Knight testified that he observed Brown's vehicle and checked to see if it had an automatic or manual transmission, and he testified that it had a manual transmission.  *See* Testimony of Rob Knight, Transcript of Trial, April 11, 2002, Exhibit 39, pp. 725-26, 729.  Knight testified that it is easier to leave an acceleration scuff mark in a car with a manual transmission than in a car with an automatic transmission.  *See id*. at 729.  Brown argues that his trial counsel should have impeached Knight's testimony that his car had a manual transmission, using a photograph that shows that Brown's car had an automatic transmission.  *See* First Amended Petition, p. 16; Opposition to Motion to Dismiss, pp. 15-16; *see also* Photograph, Exhibit 100.  Brown refers to the photograph of the interior of a car that he submits in this case as Exhibit 100 as a "trial exhibit," but does not cite to anywhere in the trial transcript where that photograph was authenticated or admitted into evidence.  *See*  First Amended Petition, p. 16; Opposition to Motion to Dismiss, pp. 15-16.  Nevertheless, assuming the photograph could have been used in the cross-examination of Knight, it appears from a reading of the entirety of Knight's testimony, and in light of the entire record of the trial, that such cross-examination would have had little impact.  Knight did not testify that it was only possible to leave an acceleration scuff mark with a manual transmission; he only testified that it is easier.  His testimony that the acceleration scuff marks were consistent with Brown's car was compelling, and was consistent with the testimony of witnesses who saw a car that looked like Brown's peeling out of the Bains Market parking lot.  *See* Testimony of Lisa Polon, Transcript of Trial, April 8, 2002, Exhibit 36, pp. 225-33; Testimony of Matthew Jimenez, Transcript of Trial, April 8, 2002, Exhibit 36, pp. 244-52; Testimony of Marco Bimbo, Transcript of Trial, April 9, 2002, Exhibit 37, pp. 287-306.  Moreover, Brown did in fact introduce other evidence that Brown's

1    car had an automatic transmission, calling into question Knight's testimony to the contrary.  *See*

2    Testimony of Bonnie Brown, Transcript of Trial, April 15, 2002, Exhibit 42, p. 1072.  In short, in

3    this court's view, the cross-examination suggested by Brown would have had no effect on the

4    outcome of the trial.  Brown's trial counsel was not ineffective for failing to attempt to impeach

5    Knight's testimony as Brown suggests.

6           Brown's post-conviction counsel was not ineffective for failing to raise, in Brown's first

7    habeas action, the claims he asserts in this case as Claims 1J and 3F.  Brown does not show cause

8    and prejudice to overcome his procedural default of Claims 1J and 3F.

9                  Claim 1K

10          In Claim 1K, Brown claims that his trial counsel was ineffective "for failing to object to

11   Sarvpreet Bains' penalty phase testimony."  First Amended Petition, p. 15.  Brown's claim, in its

12   entirety, is as follows:

13          Sarvpreet Bains testified during the penalty and sentencing hearings that
       Brown laughed at him and his family.  (Ex. 45, p. 1394, ex. 52, p. 28.)  The
14     prosecutor improperly emphasized this false and improper testimony during his
       penalty phase closing arguments.  (Ex. 45, p. 1394.)  He also emphasized the
15     testimony during sentencing.  (Ex. 52, p. 26-27.)  The trial court did not recall Brown
       ever laughing at the victim's family.  (Ex. 52, p. 27.)  Trial counsel objected to this
16     testimony at sentencing, but failed to do so during the penalty phase.  (Ex. 52, p. 26.)

17          Trial counsel was ineffective for failing to object to this testimony before the
       jury, the body which determined Brown's sentence.  Brown was prejudiced where the
18     jury heard testimony that Brown laughed at the victim's family, which could be
       interpreted to show a lack of remorse.  Brown did no such thing during trial, a fact
19     confirmed by trial counsel and the court.  But for counsel's ineffectiveness, Brown
       would have had a better outcome at trial.

20

21   First Amended Petition, pp. 16-17.

22          Sarvpreet Bains is the son of the victim, Kuldip Bains.  The portion of the testimony of

23   Sarvpreet Bains, at the penalty phase of Brown's trial on April 16, 2012, that Brown claims his

24   attorney should have objected to, was as follows:

25          THE WITNESS:  And then after the incident, two years go by.  You come
       back here an you guy sitting down there, laughing and smile on your face, just like
26     never he did anything.  Just like -- just like he laugh in my face, like sitting down
       there, like: Ha-ha-ha, I did that to you; what you can do to me?

I could not know that thing, that somebody shot somebody and come and laugh on your face again.  He down there, laugh, like ha-ha-ha, just like: Hey, it's a piece of cake, I shoot your dad, you know?

Transcript of Trial, April 16, 2002, Exhibit 45, p. 1394.  Brown's trial counsel did not object to that testimony.

At the sentencing hearing before the trial court on July 30, 2002, the prosecutor mentioned, in his argument, the testimony by Sarvpreet Bains that Brown had laughed, and Brown's counsel then objected. *See* Transcript of Sentencing, July 30, 2002, Exhibit 52, p. 27.  The judge commented that she did not see Brown laugh. *See id.*  The court then allowed the prosecution to call Sarvpreet Bains to testify to clarify his comment, at the penalty phase of the trial, that Brown laughed, and Sarvpreet Bains at that time testified as follows:

DIRECT EXAMINATION

BY MR. HALL [prosecutor]:

*     *     *

Q.     During the course of this trial, did you see this defendant laugh and look at you and laugh during the course of this trial?

A.     Yes, sir.

Mr. Hall:     No further questions.

CROSS-EXAMINATION

BY MS. BUTKO [defense counsel]:

Q.     Mr. Bains, exactly when did you see that?

A.     I was sitting right there.  He was sitting right there.  He turned around, and he was talking to his mom and dad and then looked at me and then laugh, and then he looked at his mom and dad and looked at me.

Q.     Who was sitting next to him[?]

A.     You were sitting next to him.

Q.     And while I was sitting here, my client was --

A.     Was talking to his mom and dad back there, yes.

14

1          MS. BUTKO:  I have no further questions.  That is untrue, Your Honor.  I sat

2  here.  I saw my client --

3  *Id*. at 28-29.

4          As the court understands Brown's claim, it is that his trial attorney was ineffective for not

5  objecting to the testimony of Sarvpreet Bains at the penalty phase of the trial on April 16, 2002, but

6  he proffers no basis for an objection other than the claim that the testimony was untrue.  *See* First

7  Amended Petition, pp. 16-17.  This court sees no viable objection that Brown's trial counsel could

8  have made regarding that testimony.  An objection by trial counsel to Sarvpreet Bains' testimony at

9  the penalty phase of the trial, on the ground that counsel felt the testimony to be untrue, would have

10  been as ineffectual then as it was later at the sentencing hearing.  Moreover, the jury had ample

11  opportunity to observe Brown's demeanor at the trial; an objection by trial counsel to Sarvpreet

12  Bains' testimony would have done little or nothing to change the impression that the jury already had

13  regarding Brown's demeanor, and the amount of remorse that he did, or did not, show.  Brown's trial

14  counsel was not ineffective for failing to make such an objection.  The court finds this claim, Claim

15  1K, to be without merit, and therefore insubstantial within the meaning of *Martinez* and *Trevino*.

16          Brown's post-conviction counsel was not ineffective for failing to raise, in Brown's first

17  habeas action, the claim he asserts in this case as Claim 1K.  Brown does not show cause and

18  prejudice to overcome his procedural default of Claim 1K.

19         <u>Claim 1L</u>

20         In Claim 1L, Brown claims that his trial counsel was ineffective "in her presentation of the

21  motion to suppress Brown's statements."  First Amended Petition, p. 17.  Brown's claim, in its

22  entirety, is as follows:

23         Trial counsel filed multiple motions to suppress Brown's statements to police.
     (Exs. 9, 15.)  Trial counsel fashioned the motions as Brown invoking a selective

24  waiver of his right to counsel, whereby he waived his right to counsel on the
     misdemeanor charge but not the murder charge.  (*Id.*)  In fact, Brown's right to

25  counsel was violated when he invoked his right to counsel by asking the officer if he
     needed a lawyer, noting that "if I'm only being charge with O&R, I don't need one."

26  (Ex. 95, p. 4)  To the extent this statement was ambiguous, the police officer was
     required to inquire further to determine whether Brown was knowingly, intelligently

1    and voluntarily invoking his right to counsel.  Trial counsel was ineffective for failing
2    to properly raise the suppression motion issue.  Brown was prejudiced when the trial
     court denied his motion to suppress, based upon the "selective waiver" theory put
3    forth by counsel.

4    *Id.*; *see also* Brown's Statement to Police, Exhibit 95.

5        The court finds Brown's claim in this regard to be without merit.  The record belies Brown's

6    claim that his trial counsel were ineffective with respect to the presentation of Brown's motion to

7    suppress his statements to the police.  In fact, Brown's trial counsel vigorously litigated the motion

8    to suppress Brown's statement to police, arguing, among other things, that he did not make an

9    unambiguous waiver of his right to counsel.  *See* Motion to Suppress, Exhibit 9; Transcript,

10   February 27, 2001, Exhibit 12; Order, Exhibit 13; Renewed Motion to Suppress, Exhibit 15; Reply

11   in Support of Renewed Motion to Suppress, Exhibit 26; Transcript, March 6, 2002, Exhibit 28;

12   Order, Exhibit 30.  Brown does not show that his counsel performed unreasonably with respect to the

13   motion to suppress, and he does not remotely show that there was a reasonable probability of a

14   different outcome if the motion had been argued differently.  The court finds Claim 1L to be without

15   merit, and therefore insubstantial within the meaning of *Martinez* and *Trevino*.

16       Brown's post-conviction counsel was not ineffective for failing to raise, in Brown's first

17   habeas action, the claim he asserts in this case as Claim 1L.  Brown does not show cause and

18   prejudice to overcome his procedural default of Claim 1L.

19           Ground 4

20       In Claim 4, Brown claims that his federal constitutional rights were violated because "the

21   State knowingly introduced evidence against Brown in the form of an altered surveillance tape, and

22   where trial counsel was not advised of the alterations made to the tape."  First Amended Petitino,

23   p. 26.

24       Claim 4 is not a claim of ineffective assistance of counsel.  *See id*. at 26-27.  As the law

25   stands, ineffective assistance of post-conviction counsel cannot constitute cause with respect to the

26   procedural default of any sort of claim other than ineffective assistance of trial or direct appeal

16

counsel.  *See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir.2013) (declining to extend *Martinez* to claims based on *Brady v. Maryland*, 373 U.S. 83 (1963)), *cert. denied*, 134 S.Ct. 1771 (2014)).  Brown does not show cause and prejudice to overcome his procedural default of Claim 4.

Exhaustion

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b).  The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations.  *See Picard v. Conner*, 404 U.S. 270, 275 (1971).  To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  A claim is fairly presented to the state's highest court if, before that court, the petitioner describes the operative facts and legal theory upon which the claim is based.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard*, 404 U.S. at 275; *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982).

In their motion to dismiss, respondents assert that Claims 3A, 3C, 7A, 7B, 7C and 7D are unexhausted in state court.  Motion to Dismiss, pp. 6-9.

Claim 3A

In Claim 3A, Brown claims that his federal constitutional rights were violated because the trial court "erred in refusing Brown's proffered instructions on his theory of defense."   First Amended Petition, p. 22.  Specifically, Brown complains of the trial court's refusal to give a jury instruction on second degree murder.  *See id*.

Brown did, on his direct appeal to the Nevada Supreme Court, assert a claim that the trial court erred in rejecting his proposed jury instruction regarding second degree murder, but Brown did not, there, claim a federal constitutional violation.  *See* Appellant's Opening Brief, Exhibit 59, p. 38. Brown's claim, as set forth in his opening brief on his direct appeal, was as follows:

1         The Defendant is entitled to have the jury instructed on his theory of the case,
2    no matter how weak or incredible that evidence might be. *Earl v. State*, 111 Nev.
     1304, 1308, 904 P.2d 1029, 1031 (1995).

3         In this case, the Defendant sought instruction on second degree murder.  This
     was a case where nothing was taken from the business property.  If the jury did not
4    agree that felony murder had occurred, the jury had to determine if Brown committed
     this murder with premeditation and deliberation.  In this case, evidence demonstrated
5    that Brown arrived at Bains Market after the murder, ran inside and attempted to help
     Bains.  There was ample evidence which could have led a reasonable jury to
6    deliberate over whether the actions of Brown were premeditated and deliberate.
     Refusal of the district court to instruct the jury in this regard was improper.

7

8    *Id*. (citation to record on direct appeal omitted).  There was nothing in that statement of the claim to

9    indicate to the Nevada Supreme Court that Brown meant to assert a federal constitutional claim.  *See*

10   *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999) (similarities between claims of state and

11   federal error are insufficient to establish exhaustion).  Brown's citation of the *Earl* case did not

12   indicate he intended to assert a federal constitutional claim; a reading of *Earl* reveals that its holding

13   regarding a defendant's right to a jury instruction regarding his theory of defense was a matter of

14   state law.  *See Earl*, 111 Nev. at 1308-09.  Claim 3A is unexhausted in state court.

15            Claim 3C

16        In Claim 3C, Brown claims that the trial court gave a jury instruction on attempted robbery

17   that violated his federal constitutional right to due process of law.  *See* First Amended Petition,

18   pp. 23-24.

19        Here again, Brown did, on his direct appeal to the Nevada Supreme Court, assert a similar

20   claim, but he did not claim a federal constitutional violation.  *See* Appellant's Opening Brief, Exhibit

21   59, p. 40.  Brown's claim, as set forth in his opening brief on his direct appeal, was as follows:

22        Instruction Number 24 was given over defense objection.  The instruction was
     erroneous.  The improper language of this instruction states, "Once a person forms the
23   intent and commits the act in furtherance of the robbery, he is then guilty of an
     attempted robbery, whether he abandoned that attempt because of the approach of
24   other persons or because of a change in his intentions due to a stricken conscience."
     This language shifted the burden of proof to the Defendant.  There was no evidence
25   that the robbery attempt was abandoned due to the approach of other persons.  This
     language forced Brown to defend against a "stricken conscience" and tied his hands

26

18

1    on the question whether he should testify.  That portion simply should not have been
2    given.  It was not consistent with the theory of the prosecution.

        Failure to properly instruct the jury deprived the Defendant of a fair trial.

3

4    *Id*.  Brown did not assert a federal constitutional claim.  His general reference to his right to a fair

5    trial was insufficient.  *See Hiivala*, 195 F.3d at 1106 ("[G]eneral appeals to broad constitutional

6    principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

7    establish exhaustion.").  Claim 3C is unexhausted in state court.

8            Claim 7A

9        In Claim 7A, Brown claims that "[t]he search warrant issued on June 24, 2000 failed to

10   comply with Brown's Fourth and Fourteenth Amendment rights to be free from unlawful searches

11   and seizures."  First Amended Petition, p. 31.

12       Brown asserted a similar claim on his direct appeal, but did not indicate that he intended it to

13   be based on a federal constitutional right.  *See* Appellant's Opening Brief, Exhibit 59, pp. 25-26.

14   Brown's citation of *State v. Allen*, 118 Nev. 842, 60 P.3d 475 (2002), in his claim on his direct

15   appeal, was insufficient to fairly indicate to the Nevada Supreme Court that he meant to raise a

16   federal constitutional issue.  The Nevada Supreme Court's ruling on the claim was based solely on

17   state law.  *See* Order of Affirmance, Exhibit 62, pp. 4-5.  Claim 7A is unexhausted in state court.

18           Claim 7B

19       In Claim 7B, Brown claims that "[t]he August 8, 2000 search of Brown's car was unlawful

20   and the evidence should have been suppressed."  First Amended Petition, p. 32.

21       With regard to this claim as well, Brown made a similar claim on his direct appeal, but it was

22   not based on a federal constitutional right.  *See* Appellant's Opening Brief, pp. 25-26.  Brown argues

23   that in his reply brief he alerted the Nevada Supreme Court to the federal nature of his claim.

24   *See* Opposition to Motion to Dismiss, pp. 25-26.  That, however, was an improper means of raising

25   the claim under state law.  *See Diomampo v. State*, 124 Nev. 414, 427 n.25 (refusing to consider

26   argument raised for first time in reply brief); *see also Roettgen v. Copeland*, 33 F.3d 36, 38 (9th

Cir.1994) (presenting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim for exhaustion purposes (citing *Castille v. Peoples* 489 U.S. 346, 351 (1989))).  Claim 7B is unexhausted.

### Claim 7C

In Claim 7C, Brown claims that his federal constitutional rights were violated as a result of "[t]he trial court's ruling to admit evidence of Brown's possession of a box cutter and a photograph in which he is holding a gun."  First Amended Petition, p. 32.

Here too, Brown made a similar claim on his direct appeal, but it was not based on a federal constitutional right.  *See* Appellant's Opening Brief, pp. 27-28.  In his opening brief, Brown cited federal cases -- *United States v. Johnson*, 820 F.2d 1065 (9th Cir.1987); *United States v. Roderiguez*, 882 F.2d 1059 (6th Cir. 1989), *United States v. Blackstone*, 56 F.3d 1143 (9th Cir. 1995) -- but none of those citations were such as to indicate that Brown meant to assert a federal constitutional claim. Also, Brown did mention the federal constitution (albeit the Fourth Amendment instead of the Fourteenth Amendment) in his reply brief on his direct appeal.  *See* Reply Brief, Exhibit 61, p. 13. But, again, that was an improper means of asserting the claim.  *See Diomampo*, 124 Nev. at 427 n.25; *see also Roettgen*, 33 F.3d at 38.  Claim 7C is unexhausted.

### Claim 7D

In Claim 7D, Brown claims that his federal constitutional rights were violated because "[a]ny evidence obained at the Washoe County Medical Center should have been suppressed."  First Amended Petition, p. 34.

With regard to this claim, the somewhat similar claim that Brown made before the Nevada Supreme Court on his direct appeal clearly was not based on a federal constitutional right. *See* Appellant's Opening Brief, Exhibit 59, p. 29.  Claim 7D is unexhausted.

Cognizability of Claims 7A and 7B

Again, in Claim 7A, Brown claims that "[t]he search warrant issued on June 24, 2000 failed to comply with Brown's Fourth and Fourteenth Amendment rights to be free from unlawful searches and seizures," and in Claim 7B, Brown claims that "[t]he August 8, 2000 search of Brown's car was unlawful and the evidence should have been suppressed." First Amended Petition, pp. 31-32. As is discussed above, both of those claims are unexhausted in state court. Respondents also contend that they are not cognizable in this federal habeas corpus action. *See* Motion to Dismiss, p. 10.

A Fourth Amendment claim is not cognizable in a federal habeas action provided that the petitioner had a "full and fair" opportunity to litigate the claim in state court. *Stone v. Powell*, 428 U.S. 465, 481 (1976). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided." *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.1996) (citations omitted). The petitioner bears the burden of establishing that the state courts did not provide a full and fair opportunity for litigation of the Fourth Amendment claim. *Woolery v. Arave*, 8 F.3d 1325, 1326-27 (9th Cir.1993); *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir.1977). If the petitioner does not carry that burden, the Fourth Amendment claim must be dismissed.

Brown concedes that Claim 7A is barred by the rule of *Stone v. Powell*, but states that he asserts the claim "in order to preserve the issue for future appellate review and/or certiorari to the United States Supreme Court." *See* Opposition to Motion to Dismiss, p. 29. Claim 7A will be dismissed.

With respect to Claim 7B, Brown argues that in state court he was not provided a full and fair opportunity to litigate the claim. *See id*. at 29-30. He argues that he raised the claim in the state district court by means of an oral motion to suppress, but, "[w]ithout allowing argument or briefing on the issue, the trial court found the search was conducted with consent of Brown through the presence of his attorney." *Id*. at 29; *see also* Transcript of Proceedings, March 6, 2002, Exhibit 28, pp. 113-22; Transcript of Proceedings, March 11, 2002, Exhibit 29, pp. 1-20. Brown goes on to

argue that he raised this claim on his direct appeal, but "despite the review conducted by the Nevada

Supreme Court, he did not have a 'full and fair opportunity' to litigate the Fourth Amendment claim

because the trial court did not allow him to present argument or briefing on the issue."  Opposition to

Motion to Dismiss, pp. 29-30.  Brown's argument in this regard is frivolous.  First, the record

reflects that Brown had ample opportunity to file a written motion to suppress related to the

August 8, 2000, search of his car.  Brown filed several written motions before trial, including

motions to suppress.  *See*, *e.g.*, Motion to Redact Tapes and Transcripts, Exhibit 7; Motion to

Suppress Statement, Exhibit 9; Renewed Motion to Suppress Statements, Exhibit 15; Alternative

Motion to Suppress Physical Evidence, Exhibit 16; Renewed Motion in Limine Regarding Prior Bad

Acts, Exhibit 17; Motion to Suppress all Evidence from Vehicle, Exhibit 18.  Brown does

not explain why he did not contest, in a written motion, with written briefing, the legality of the

August 8, 2000, search of his car.  Second, the record reflects that, after Brown's counsel raised the

issue of the legality of the August 8, 2000, search of the car by oral motion, the trial court provided

ample opportunity, in hearings on two separate days, for argument regarding that motion.

*See* Transcript of Proceedings, March 6, 2002, Exhibit 28, pp 113-22; Transcript of Proceedings,

March 11, 2002, Exhibit 29, pp. 1-20.  Brown does not point to anywhere in the record where the

trial court denied his counsel an opportunity to present argument or written briefing regarding this

claim.  Finally, Brown does not explain his argument that alleged curtailment of his argument and

briefing in the trial court affected his opportunity to present the claim before the Nevada Supreme

Court; the court finds that argument to be meritless.  Brown has failed to show that he was denied a

full and fair opportunity to litigate the claim.  Claim 7B will be dismissed.

>            Conclusion

The court determines that Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F and 4 are procedurally defaulted;

those claims will be dismissed on that ground.

The court determines that Claims 3A, 3C, 7A, 7B, 7C and 7D are unexhausted in state

court.

1   With respect to Claims 3A, 3C, 7C and 7D, Brown will be directed to make an election, to

2   either file a notice of abandonment of those claims, indicating that he elects to abandon those claims

3   and proceed in this case with the litigation of his remaining claims, or, alternatively, file a motion for

4   stay, requesting a stay of this action to allow him to return to state court to Claims 3A, 3C, 7C and

5   7D. If Brown elects to file a motion for stay, he must make a showing that a stay is warranted, as

6   prescribed in *Rhines v. Weber*, 544 U.S. 269 (2005). If petitioner does not, within the time allowed,

7   file a notice of abandonment of Claims 3A, 3C, 7C and 7D, or a motion for a stay to allow

8   exhaustion of those claims in state court, Brown's entire first amended habeas petition will be

9   dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

10   Claims 7A and 7B, which are unexhausted, are barred by the rule of *Stone v. Powell*.

11   Therefore, Claims 7A and 7B will be dismissed. *See* 28 U.S.C. § 2254((b)(2) ("An application for a

12   writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

13   exhaust the remedies available in the courts of the State.").

14   **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 42) is

15   **GRANTED IN PART AND DENIED IN PART**. Claims 1I, 1J, 1K, 1L, 2E, 3E, 3F, 4, 7A and 7B

16   of petitioner's first amended petition for writ of habeas corpus (ECF No. 15) are dismissed, and, with

17   respect to Claims 3A, 3C, 7C and 7D, the court will direct petitioner to make an election, as

18   described below; in all other respects, the motion to dismiss is denied.

19   **IT IS FURTHER ORDERED** that petitioner shall have **30 days**, from date of entry of this

20   order, to file a notice of abandonment of Claims 3A, 3C, 7C and 7D, or a motion for a stay of this

21   action to allow him to exhaust those claims in state court, as described in more detail above.

22   **IT IS FURTHER ORDERED** that, if petitioner files a notice of abandonment of Claims

23   3A, 3C, 7C and 7D, respondents shall then have 90 days to file an answer, responding to petitioner's

24   remaining claims. After respondents file an answer, petitioner shall have 60 days to file a reply.

25   ///

26   ///

1       **IT IS FURTHER ORDERED** that, if petitioner files a  motion for a stay to allow

2  exhaustion of  Claims 3A, 3C, 7C and 7D in state court, respondents shall thereafter have 30 days to

3  file a response to that motion, and petitioner shall thereafter have 20 days to file a reply.

4       **IT IS FURTHER ORDERED** that, if petitioner does not, within the time allowed, file a

5  notice of abandonment of Claims 3A, 3C, 7C and 7D, or a motion for a stay to allow exhaustion of

6  those claims in state court, petitioner's entire first amended habeas petition will be dismissed

7  pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

8

9       Dated this 6th day of November, 2015.

10

11                                             _____

12                                           UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26